Salisbury v. Salisbury.

SALISBURY, *Appellant*, v. SALISBURY.

92 683
34a 269
92 683
102 44
102 209
92 683
48a 618
92 683
89a 231

**Practice**: DIVORCE: REVIEW OF DECREE. A decree of divorce becomes final and conclusive as against a petition for review, whether under the statute or based upon the ground of fraud, after the expiration of the term at which it was obtained, where the court had jurisdiction of the parties and the subject-matter.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*Slover, Andrews & Adams* for appellant.

(1) The court erred in sustaining the demurrer to plaintiff's bill. (2) A court of equity has jurisdiction to protect itself against fraud, as well as parties litigant, and will, in the exercise of its functions, set aside not only statutory, but even constitutional provisions, where private rights are infringed, be they choate or inchoate.

*John W. Wofford* for respondent.

Respondent contends that the bill was properly dismissed, and cites, in support of that, section 2185, Revised Statutes, and also section 2184. The case of *Childs v. Childs*, 11 Mo. App. 395, is precisely like this case, except that the facts in *Childs v. Childs* make a much stronger equity in behalf of the wife than do the facts in this case make in behalf of the appellant. And it was the ruling in the case of *Childs v. Childs* that Judge Gill followed in dismissing appellant's bill. The doctrine there upheld is also supported in *Smith v. Smith*, 20 Mo. 166. *Parish v. Parish*, 9 Ohio St. 534; *Greene v. Greene*, 2 Gray, 361; Bishop on Mar. & Div., sec. 753; *DeGraw v. DeGraw*, 7 Mo. App. 121; *Lucas v. Lucas*, 3 Gray, 136. We think it well settled that the

court cannot grant alimony except as an incident to a proceeding for a divorce. *Doyle v. Doyle*, 26 Mo. 545. And in this case, a divorce had already been granted, at a prior term of the court, to both parties. Even if there was a fraud practiced by the respondent on the appellant in his suit for a divorce, that does not authorize the court to set aside the decree for fraud in a separate and independent action, at a subsequent term of court. The court had jurisdiction of the parties and of the subject-matter. The plaintiff in that suit was a citizen and resident of Jackson county. There was no fraud on the court; jurisdiction was not obtained by fraud. We think the doctrine well settled that if the court had jurisdiction of the parties, that the decree is binding. *Hood v. Hood*, 110 Mass. 463; *Burlar v. Shannon*, 115 Mass. 438; *Cheever v. Wilson*, 9 Wall. 108; *Getty v. Getty*, 3 Lea, 260; *Van Fosen v. State*, 37 Ohio St. 317. Outside of all this, if plain words mean anything, section 2185, Revised Statutes, settles this case. And while it may seem harsh in some cases, Scott, J., in *Smith v. Smith*, 20 Mo. 166, well said any other rule would be a "multiplication of misfortunes to innocent women and children." And, after all, laws are general in their operation, and from necessity.

BLACK, J.—This suit was commenced on the nineteenth of May, 1884, in the circuit court of Jackson county; the case is here from a judgment sustaining a demurrer to the petition.

The petition is lengthy, but the facts stated are, in substance, as follows: The plaintiff and defendant were married in the state of New York, in 1880, and in January of that year moved to Kansas City, Missouri, and commenced boarding with Isaac Westrope and his wife, Kate Westrope, who lived in a house owned by the defendant. The defendant at once began a systematic course of neglect toward plaintiff, and devoted his attentions to Mrs. Westrope; this conduct became so open

and shameful that Mr. Westrope abandoned his wife, and defendant furnished her with house and support. In June, 1880, the plaintiff, partly from the persuasions of her husband, and partly because he failed to provide a furnished home, which he was able to do, went to New York to her parents. She did not hear from her husband, and returned to Kansas City in September of the same year, when she found him and Mrs. Westrope living together. The three remained in the same house for two or three weeks, when Mrs. Westrope went to Lindley, in this state, to open a millinery establishment. She remained there but a short time, and then returned to defendant, who took her to his house, but plaintiff resisted the outrage, and she went back to Lindley, where she remained until March, 1881, at which time she again returned to Kansas City.

In November, 1881, the plaintiff and defendant went to New York, with the avowed purpose, on his part, to remain there, but in the course of two or three weeks he left the plaintiff, saying he intended to go to Pennsylvania; but it is alleged that he returned to Kansas City, and from that time to the filing of this petition, lived in adultery with Mrs. Westrope, supporting and maintaining her. At the term of the Jackson county circuit court preceding the one to which this suit was brought, the defendant procured a decree of divorce in a suit against the plaintiff, on a charge of desertion. Plaintiff had no notice of that suit, save that by publication in a newspaper. Upon the facts detailed, it is alleged that the decree was procured by fraud upon the court, and defendant in that suit, plaintiff in this suit. It is alleged that, at the date of the marriage, defendant owned certain real estate, which is described, but, to defraud plaintiff of her marital rights, induced her to join in a deed to his brother; that he subsequently acquired other property, but, for a like purpose, had the same conveyed to the brother.

The prayer of the petition is that the decree of divorce be set aside ; that the plaintiff be divorced from the defendant ; that she be awarded alimony pending the suit, and in gross on final hearing, to be levied of the described lands. Besides the facts before detailed, it is alleged that plaintiff and defendant corresponded by letter within the year next preceding the date at which the latter procured the divorce. The general allegation is, and the detailed facts show, that defendant's course of conduct was a systematic contrivance to get rid of his wife, that he was not entitled to the decree, but procured the same by a shameful deception and fraud on the plaintiff. No marriage relation has been contracted by either party since that time, and it will be taken, without further discussion, that plaintiff on the petition, confessed as it now stands, is entitled to relief, unless she is shut out and deprived of it by reason of our statute.

By section 2184 appeals in these divorce suits must be allowed at the term at which the judgment or decree appealed from was rendered, or a writ of error must be sued out within sixty days after the rendition of the judgment. Section 2185 is as follows: "No petition for review of any judgment for divorce, rendered in any case arising under this chapter, shall be allowed, any law or statute to the contrary notwithstanding ; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody, and maintenance of the children, or any of them, as in other cases."

The case of *Smith v. Smith*, 20 Mo. 167, came before this court in 1854. There the husband had procured a decree of divorce on an order of publication, and had married another woman. The former wife, under sections 1, 2, 3, and 4, article 6, of the chancery code of 1845, filed her petition for review, which was sustained. Scott, J., dissented, and made some strong observations

against the right of the court to interfere in such cases, as the law in terms allowed the party, at whose instance the decree was procured, to immediately marry again. Following this case, and at the revision of 1855, section 2185 was adopted. This section, it was held in *Mansfield v. Mansfield*, 26 Mo. 163, did not apply to divorce suits commenced prior to May 1, 1856, and that is all the case decides, for that case came under the law as it previously existed. The policy of the statute is there severely criticised, but it has remained upon the statute books from that day to this, since which time no case, until this one, has come before this court for review, otherwise than on appeal or writ of error.

The sections of the chancery code of 1845, before mentioned, provided that when a final decree had been rendered against a defendant, who has not been summoned and had not appeared to the suit, such decree might be set aside by bill of review, filed within a designated time, showing that the decree was against equity. These sections are substantially reënacted in the present practice act (secs. 3684–5–6, R. S., 1879); and it is contended, by counsel for appellant, that the petition for review, which is prohibited, is that only which is provided by the statute, and that a court of equity always has the power, independent of the statute, to set aside its own decrees for fraud in procuring them. But the statute declares that no petition for review shall be allowed, any *law* or *statute*, to the contrary, notwithstanding. It is clear we cannot limit the prohibition to this statutory review. In chancery practice bills of review might be brought upon the discovery of new matter; such, for example, as the discovery of a release or receipt, which would change the merits of the claim upon which the decree was founded. Story's Eq. Plead. [9 Ed.] sec. 412. So a bill to impeach a decree for fraud is an original bill in the nature of a bill of review.

Story's Eq. Plead., sec. 426 ; 2 Dan. Ch. Plead. and Prac., sec. 1584, note 4.

The present petition is essentially a bill of review, or, as it is said, in the nature of a bill of review. Its first and foremost object is to set aside the former decree, and we cannot escape the conclusion that it is within the statute, and clearly prohibited. It was the evident purpose of the legislature, with the example of *Smith v. Smith, supra,* before it, to deny a review in all cases, whether based upon a charge of fraud or not. The breaking up of second marriage relations, which must often result in disaster to innocent persons and children, doubtless led to the enactment. It would seem the statute might allow a review of these divorce decrees rendered on publication of notice, where no new marriage relation has been contracted, without violating any principle of sound public policy. But a criticism of the law avails nothing. The statute is clear and emphatic. It makes no exception. The courts are powerless to legislate one into it. It asserts broadly a principle of public policy which has found recognition elsewhere. *Parrish v. Parrish,* 9 Ohio St. 534; *Greene v. Greene,* 2 Gray, 361. The St. Louis court of appeals reached the same conclusion, in a case not materially different from the one in hand. *Childs v. Childs,* 11 Mo. App. 395.

The court, in the divorce suit, had jurisdiction of the parties and the subject-matter, and the decree of divorce, after the expiration of the term at which it was obtained, became final and conclusive as against a petition for review, whether under the statute or based upon the ground of fraud.

The judgment is affirmed. All concur, except Sherwood, J., who dissents.