IRVINE *et al.* v. LEYH, *Appellant.*

1. **Judgment:** FRAUD : BILL OF REVIEW : STATUTE. It is not necessary, to sustain a bill of review under Revised Statutes, 1879, section 3686, to show fraud in obtaining the judgment.

2. ———: ———: ———. It is sufficient in such case to show that the petition under which the judgment was procured was untrue in some material matter, or that the party asking the review has and had a good defense.

3. **Heirs:** COVENANTS OF ANCESTOR. Heirs are chargeable on the covenants of their ancestors to the extent of the property which descended to them, but it must have been acquired by devise or descent, and not by deed.

4. **Fraud:** ASSAILING JUDGMENT FOR. The fraud which authorizes a court of equity to set aside a judgment must have been perpetrated in procuring the judgment.

5. ———: ———: SERVICE BY PUBLICATION. The foregoing rule does not, however, apply in all its strictness to suits where the defendants have been brought in only by newspaper notice and had no actual notice of the suit, and, therefore, no real opportunity to defend. [ BRACE and BARCLAY, JJ., *dissenting.*]

6. ———: ———: ———. But, even where the defendants were so brought in only by constructive service, it is not sufficient to entitle them to relief against the judgment for fraud, to show that no valid cause of action existed against them in the suit in which the judgment was procured.

7. ———: ———. They must at least show that the claim was founded upon or conceived in fraud, and that the machinery of the law was resorted to for the purpose of enforcing what was known to be a fraudulent demand.

*Appeal from St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*Theo. Bruere* for appellant.

(1) The respondents are not entitled to the relief prayed for in their petition, if appellant acted in good faith and honestly obtained the judgment sought to be set aside. *Payne v. O'Shea*, 84 Mo. 129 ; *McGindley v. Newton*, 75 Mo. 115 ; *Smith v. Sims*, 77 Mo. 269 ; *Acock v. Acock*, 57 Mo. 154 ; *Carolus v. Koch*, 72 Mo. 647 ; *Bank v. Hughes*, 10 Mo. App. 11 ; *Lavender v. Boaz*, 17 Ill. 421 : *Zellerbach v. Allenberg*, 67 Cal. 296 ; Freeman on Judgments [ 3 Ed.] secs. 489, 493. ( 2 ) The petition is fatally defective in not stating the facts constituting the alleged fraud in obtaining the judgment against respondents. The allegation that the judgment was obtained by fraudulent representations is not sufficient. *McGindley v. Newton*, 75 Mo. 115 ; *Smith v. Sims*, 77 Mo. 269. ( 3 ) The appellant pleads in bar to this suit section 3686, Revised Statutes, 1879, which requires respondents to file their petition for a review of said judgment within three years after said final judgment was rendered. R. S. 1879, secs. 3684, 3685, 3686 ; *Jones v. Driskill*, 94 Mo. 191. ( 4 ) Nancy Irvine was a daughter of John Howell, and one of his heirs. All the property acquired by her by deed, or gift, or devise, was on account of such heirship, and not purchased by her from him, and in equity she ( or her heirs ) should contribute her share to make good the covenant of warranty of her father, John Howell.

*C. W. Wilson* for respondents.

(1) If Nancy Irvine acquired anything from John Howell's estate she received it by devise, not by inheritance. She was not responsible on the breach of warranty in Howell's deed to Leyh. *Saur v. Griffin*, 67 Mo. 654; 4 Kent's Com. [11 Ed.] side p. 420. (2) A court of equity will set aside a judgment, etc., when obtained by fraud or mistake. *Wright v. Barr*, 53 Mo. 340; *Durfee v. Moran*, 57 Mo. 374; *Wilson v. Broughton*, 50 Mo. 17; 1 Story's Eq. [6 Ed.] sec. 166; *Case v. Cunningham*, 61 Mo. 434; *Mayberry v. McClurg*, 51 Mo. 256; *Harris v. Ferrel*, 38 Mo. 421; *Summers v. Coleman*, 80 Mo. 488, 500; *Miles v. Jones*, 28 Mo. 87; *Edgell v. Seigerson*, 20 Mo. 494; 2 Story's Eq. [6 Ed.] secs. 885–887; *Marx v. Farer*, 51 Mo. 69. (3) The petition, and evidence sustaining it, were sufficient. Freeman on Judgments, secs. 488–489, and cases cited; 2 Story's Eq. [6 Ed.] sec. 887; *George v. Tutt*, 56 Mo. 141; *Johnson v. Coleman*, 23 Wis. 452; *Dobson v. Pearce*, 12 N. Y. 165; *Hayden v. Hayden*, 46 Cal. 332; *Munn v. Worral*, 16 Barb. 228; *Owen v. Ramstead*, 22 Ill. 161, 162 and 167; *Murphy v. Smith*, 86 Mo. 333 and 334; *Summers v. Coleman*, 80 Mo. 500; *Pomeroy v. Benton*, 57 Mo. 531; 1 Story, Eq. [6 Ed.] sec. 193. (4) Section 3686, Revised Statutes, 1879, constitutes no bar to plaintiff's action. *Campbell v. Garton*, 29 Mo. 343; *Stewart v. Caldwell*, 54 Mo. 539; *Harrington v. Utterback*, 57 Mo. 521; *Thomas v. Matthews*, 51 Mo. 107; *Hunter v. Hunter*, 50 Mo. 161; *Acock v. Acock*, 57 Mo. 154, 155; 66 Mo. 30. (5) Judgment for possession was properly awarded. *Baker v. St. Louis City*, 75 Mo. 671.

BLACK, J.—The plaintiffs, Adam, Sallie and Laura Irvine, Duff Brown and two married women and their husbands brought this suit against Ferdinand Leyh to set aside a judgment rendered in an attachment suit, and to cancel a sheriff's deed based upon the judgment,

conveying to Leyh fifty-two acres of land in St. Charles county.

The trial resulted in a decree for plaintiffs. There is a count in ejectment, but it need not be considered, as the case turns upon the equity branch.

Leyh commenced the suit by attachment against the present plaintiffs in the St. Charles circuit court on August 10, 1875, and attached the fifty-two acres of land now in question. In his petition he stated that John Howell conveyed to him one hundred and three acres of land by a deed with covenants of warranty, dated June 21, 1866, for the consideration of $1,869; that Howell died in 1869, leaving an estate in that county which was settled and the administration closed prior to 1873; that at the last-named date he was dispossessed of part of the land which he purchased from Howell under a judgment in favor of McElhiney; that Nancy Irvine was one of the five heirs of Howell and as such inherited property, real and personal; that she died leaving the defendants (plaintiffs in this case) as her heirs, who inherited the same property from her; and he prayed for judgment for one-fifth of the damages sustained by reason of the breach of the covenants in the deed from Howell to him.

The defendants in that case, plaintiffs here, were non-residents, one residing in Arkansas and the others in Texas. They were notified by newspaper publication pursuant to an order of court, made after a *non est* return; but they had no actual notice of the suit. Judgment by default was entered on September 15, 1876, for $155.75, under which the land was sold, and Leyh became the purchaser and received a deed in 1877.

The plaintiffs commenced this suit in October, 1885. The petition sets out the facts before narrated, and alleges that the statements made in the petition in the attachment suit were false and fraudulent in this, that Nancy Irvine acquired no property from her father's

estate, either by devise or inheritance, and that plaintiffs received no property from her estate which she acquired from the Howell estate. It is then alleged that defendant appeared in court, in the further prosecution of his attachment suit, and presented his petition to the court and falsely and fraudulently represented and stated that plaintiffs were owners of real and personal property which they inherited from their mother, and which she had inherited from her father, John Howell; that by means of said false and fraudulent allegations in his petition, and, by means of said false and fraudulent representations and statements to the court, the said Leyh procured the judgment.

We here notice the contention made by the defendant Leyh, that this suit is barred by section 3686 of the Revised Statutes of 1879. That section and the preceding and succeeding sections provide for a review where the defendant is notified by publication only and does not appear to the action. The petition for review must be filed within three years after final judgment, and, if not filed within that time, the judgment stands absolute. To obtain such review it is not necessary to show fraud in procuring the judgment, but it will be sufficient to show that the petition, upon which the judgment was procured, is untrue in some material matter, or that the party asking the review has and had a good defense. The plaintiffs here do not ask a review under the statute. They seek to set aside the attachment judgment because procured by fraud. Courts of equity have an inherent power to set aside judgments obtained by fraud, and that power is not taken away by the statute providing for a review in the cases before mentioned. This suit is not founded on the statute, and hence section 3686 constitutes no bar.

The important question here is, whether the plaintiffs have made out a case entitling them to equitable relief against the judgment and deed based thereon.

Irvine v. Leyh.

The proof produced by the plaintiffs, besides show-
ing that they were non-residents and had no actual
notice of the attachment suit, shows that John Howell
conveyed the fifty-two acres of land in question to his
daughter, Nancy Irvine, by a deed dated the twenty-
fifth of October, 1865, which was about one year prior
to the date of the deed from Howell to Leyh, containing
the covenants upon which the latter founded his attach-
ment suit.  John Howell died in 1869, leaving a will by
which he gave to his daughter, Nancy Irvine, $500, to
a son a specified eighty acres of land, and he then
provides that his personal property shall be divided
between his five children.  Nancy Irvine died in the
same year, leaving the plaintiffs as her heirs.  Malinda
Moore, who was a daughter of John Howell, admin-
istered upon the Howell estate.  At her final settlement
made in 1872, the probate court ordered her to pay to
the unknown heirs of Nancy Irvine $500, special legacy,
and also $179 as their distributive share.  There is no
specific evidence as to whether these amounts were or
were not paid to the plaintiffs.  The evidence of the
plaintiffs, which was given in general terms by way of
depositions, is, that their mother received nothing from
the Howell estate, either by devise or descent; that they
received nothing from her estate, save the land in suit
which their mother acquired from her father by deed ;
and that they knew nothing about the attachment suit
until about eighteen months before they commenced
this suit.  The evidence concerning rents and profits
shows that the land in suit was timbered land when
Leyh purchased it in 1877 ; that in a year or so there-
after he fenced part of it, and from thence on cleared
up portions of it ; that it was worth $18 per acre in its
unimproved state, and is now worth $25 to $30 per acre.
This, in substance, is all the evidence produced by the
plaintiff in chief. .

The defendant testified that he thought the matters
stated in his petition in the attachment suit were true,

and that he brought that suit by the advice of his attorney. He says : Howell wanted to sell me the whole land, including this, but I thought it was too much. He told me he willed both pieces, the one I bought and the one in controversy, to his daughter in Texas. He states further that, when he brought the attachment suit, which was in 1875, that his attorney examined the papers in the Howell estate, and found it had been settled ; that, after the death of Howell, Mrs. Irvine came here and wanted to sell him the land in question.

The attorney who brought the attachment suit, being called by the plaintiffs, testified that his brother, who was an examiner of titles, made an examination and reported to him when he brought that suit ; that he knew the Howell estate had been settled and was familiar with the existing facts ; that he thought Mrs. Irvine had inherited land from her father.

Heirs are only chargeable on the covenants of their ancestor to the extent of the value of the property descended to them. *Metcalf v. Smith's Heirs*, 40 Mo. 572 ; *State ex rel. Yeoman v. Hoshaw*, 86 Mo. 193. Nancy Irvine acquired the fifty-two acres of land from her father by deed and not by devise or descent, so that she was not chargeable on the covenants in her father's deed because of that land so received by her. It must be taken, that neither she nor the plaintiffs received any money or property from the Howell estate ; and it follows, from what has been said, that Leyh had no valid cause of action against the plaintiff.

Courts of equity, as before stated, have the inherent power to set aside judgments obtained by fraud. It is, however, insisted, and such is the law at this day, that a judgment will not be restrained or set aside simply because it is based on a cause of action tainted with fraud ; the fraud for which a judgment will be vacated must be a fraudulent act in procuring the judgment.

If the cause of action is vitiated by fraud, that is a defense, and it must be asserted in the action in which the judgment is rendered, unless its interposition is prevented by the fraud of an adversary. *Payne v. O'Shea,* 84 Mo. 129 ; *Smith v. Sims,* 77 Mo. 270 ; *Murphy v. DeFrance,* 101 Mo. 151 ; *Zellerbach v. Allenberg,* 67 Cal. 296. The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was founded. *United States v. Throckmorton,* 98 U. S. 61. The principle thus so strongly stated in the cases cited proceeds upon the ground that the party had an opportunity to appear and interpose the defense in the suit in which the judgment complained of was rendered.

The cases before cited are those in which the defendant in the first suit appeared, or had actual notice of the suit, and might have interposed the fraud as a defense. In all such cases the issues made by the pleading, or which might have been made, are justly regarded as settled and merged in the judgment, leaving collateral matters only open to investigation. But, in our opinion, the rule of the cases cited cannot be applied, in all of its strictness, to a case where the defendant has been brought in by newspaper notice only, and had no actual notice of the suit, and, as a consequence, had no real opportunity to defend. The rule must be applied to those cases where the reason upon which it is founded admits of its application.

But, to entitle the plaintiffs to the relief which they asked and procured in this case, it is not enough for them to simply show that Leyh had no valid cause of action against them. They must at least show that the claim was founded upon or conceived in fraud, and that

the machinery of the law was resorted to for the pur-
pose of enforcing what was known to be a fraudulent
demand.    Does the evidence make out such a case?

On the one hand, it seems clear that Leyh, by a
little more diligence on the part of himself and his
attorney, would have discovered the fact that Nancy
Irvine inherited nothing from her father.    Even if she
did inherit property from her father, no good reason is
shown why administration was not taken out on her
estate and the claim proven up in the usual way.    On
the other hand, there can be no doubt but Leyh had a
just cause of action against John Howell on the broken
covenants of warranty.    The Howell estate having been
settled, he was obliged to resort to the heirs for the
payment of his claim.    It seems that four out of five of
the heirs recognized the justice of the claim and paid
their proper share.    The evidence leaves it pretty clear
that Leyh supposed and believed that Nancy Irvine
inherited property from her father, and that the plain-
tiffs inherited the same property from her, and that he
had a lawful cause of action against the plaintiffs.

Again, Leyh has been in possession of the land, the
fruits of his judgment, for six or seven years prior to
the commencement of this suit, and during that time
has fenced and cleared a considerable portion of it, and
there is no evidence that plaintiffs have paid any atten-
tion to it, either in paying taxes or otherwise, during
that time.    In our opinion, the plaintiffs failed to make
out a case entitling them to equitable relief.    The evi-
dence shows, and shows only, a case for review, on a
timely petition presented therefor, under the statute
before mentioned.    The judgment is, accordingly,
reversed and the cause remanded.  BRACE and BARCLAY,
JJ., are of the opinion that no distinction whatever
should be made between those cases where there is per-
sonal, and those where there is constructive, service,
hence they apply to this case the rule before stated as

applying to those cases where there is personal service. With this modification all concur, except SHERWOOD, J., who concurs in reversing and remanding the cause.

### SEPARATE OPINION.

SHERWOOD, J.—There are some observations in the foregoing opinion, to which I do not yield assent; and, in those portions of the opinion in which I *do* concur, my *concurrence* is based upon precisely the same grounds on which my *dissent* is based in *Salisbury v. Salisbury*, 92 Mo. 683.

The sections of the statutes respecting divorces to which I desire to call attention, are as follows: .

"Sec. 2184. *Appeals and writs of error.*—No final judgment or order rendered in cases arising under this chapter shall be reversed, annulled or modified, in the supreme or any other court, by appeal or writ of error, unless such appeal shall have been granted during the term of court at which the judgment or order appealed from was rendered, or unless such writ of error shall have been issued within sixty days after the order was made or judgment was rendered.

"Sec. 2185. *Decree of divorce not subject to review —otherwise as to alimony.*—No petition for review of any judgment for divorce, rendered in any case arising under this chapter, shall be allowed, any law or statute to the contrary notwithstanding; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as in other cases." R. S. 1879.

Section 3686 of the same revision, referred to in the above opinion, is the following:

"Sec. 3686. *Judgment absolute after three years.*— If such petition for review be not filed within three years after such final judgment is rendered, the same shall stand absolute."

I have placed these sections in juxtaposition in order that their provisions may be readily contrasted.

I cannot understand why the *three* years' statute of limitations should not be as effectual a barrier against setting aside a judgment concocted in fraud, as the sixty days' limitation prescribed in section 2184, *supra*.

But it is said in the majority opinion that section 3686 does not apply to a case where the plaintiff seeks to *set aside*, but not to "*review*," the attachment judgment because procured by fraud. And yet in *Salisbury v. Salisbury, supra*, where the petition was framed after the fashion of a bill in equity, and sought to set aside a decree of divorce obtained by the most *flagrant and heinous* fraud, it was ruled that as the statute was "clear and emphatic;" that as it "made no exception," that after the expiration of the term at which the decree of divorce was obtained that that decree "became final and conclusive as against a petition for review, whether under the statute or based upon the ground of fraud."

I cannot see that the statute which prescribes the *sixty* days' limitation is any more "clear and emphatic," than the statute with the *three years'* limitation. If the judgment in the latter case is to "*stand absolute*," it seems to me that such judgment is on a par with, and no more "*absolute*" than, a decree for divorce after the lapse of *sixty* days.

Nor do I believe that *either* statute was intended to apply to a judgment or decree *concocted in fraud*.

Instances are numerous where the letter of a statute may be restrained according to the true intent of the framers of the law; where the *reason* of the law prevails over its letter, and general terms are so limited in their application as not to lead to injustice or oppression, the presumption being indulged that the legislature intended exceptions to language which otherwise would lead to such anomalous results. *Whitney v. Whitney*, 14 Mass. 92; *State v. Emerson*, 39 Mo. 80 ;

*State v. King*, 44 Mo. 283; *Riddick v. Walsh*, 15 Mo. 519; Sedgwick Stat. & Const. Law [2 Ed.] 103; *United States v. Kirby*, 7 Wall. 482; *People v. McRoberts*, 62 Ill. 38; *Fusz v. Spaunhorst*, 67 Mo. 256; *Railroad v. Evans, etc., Co.*, 85 Mo., *loc. cit.* 329.

But I maintain that, even according to the *very terms* of section 2185, that section only applies *to statutory* proceedings for *review*, and not to proceedings framed on the old chancery pattern to set aside and annul a judgment obtained by fraud.

It is not necessary to make any exceptions to the statute in order to construe it in this way. Instances are numerous where courts in the interest of justice and against the commission of some foul wrong have thus construed statutes against their very letter; sometimes even *striking out a clause* of a statute in order to make the residue of it harmonize with the evident intent of the legislature. *Bingham v. Birmingham*, decided at the present term, and other cases cited above.

But I go further yet. The judicial power of this state, as to matters of law and equity, is vested by the *constitution* in the *courts of this state*. Sec. 1, art. 6. And section 10 of article 2, of the bill of rights, declares that: "The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character."

I admit that the legislature may, to a certain extent, alter methods of procedure; but of one thing I am confident that they have no power to lop off any of the original jurisdiction of either courts of law or courts of equity, so as to deprive the citizen altogether of its benefits, leaving no substitution therefor. If the legislature could do this, as to fraud, the most ancient foundation of equitable jurisdiction, then they could next proceed to shear away the jurisdiction as to mistake, accident, etc., so that pretty soon there would be no shred or patch of the original chancery jurisdiction left. If the legislature can sweep away equity powers by *fractions*,

Irvine v. Leyh.

then there is nothing in their way to hinder them, by a single section of a statute, from sweeping away and blotting out of existence the *entire integer* of equitable jurisdiction.

It is stated in *Salisbury v. Salisbury, supra*, that the statute prescribing a sixty days' limitation asserts "a principle of public policy which has found recognition elsewhere."

Whenever I hear the plea of public policy, I am reminded of what BURROUGH, J., said in *Richardson v. Mellish*, 2 Bingham (Com. Pleas) 252: "*I, for one, protest, as my Lord has done, against arguing too strongly upon public policy; it is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail.*" To the same point see Potter's Dwarr. 215; *Ex parte Marmaduke*, 91 Mo., *loc. cit.* 264.

But *what* kind of "public policy" is that which allows you to set aside for fraud a judgment relating to some petty piece of personal property, and yet, where a contract the most solemn and sacred known to human laws, and the vested rights thereunder, are swept aside and annulled by the arts and wiles of some *fraudfeasor*, denies any redress unless the flagrant fraud is discovered *within sixty* days after its perpetration?

The cases cited in *Salisbury v. Salisbury, supra*, will now be briefly noticed. *Parish v. Parish*, 9 Ohio, St. 534, follows *Greene v. Greene*, 2 Gray, 361, but the latter has been *repudiated* in the state where it originated, by the case of *Edson v. Edson*, 108 Mass. 590, so far as the point in hand is concerned.

There can be no difference in point of principle between a proceeding to set aside a decree of divorce obtained by fraud and any other judgment or decree. This position is abundantly sustained by authority as shown by an able note prepared by Hon. CHESTER H. KRUM, 4 Cent. Law Jour. 67.