## J. W. CHILTON, Appellant, v. H. S. CADY.

## H. S. CADY v. C. L. V. RANDELL, Appellant.

### Division One, April 6, 1923.

1. **SETTING ASIDE JUDGMENT: Petition for Review: Fraud.** Under the statute (Secs. 1532 to 1539, R. S. 1919) a judgment rendered on service by publication can be set aside by a petition for review showing good cause, within three years after its rendition. It is not necessary that the petition for review allege fraud in procuring the judgment, or that fraud be established; it is only necessary that specified requirements of the statutes be complied with.

2. **———: ———: Independent Suit: Consolidation and Trial on Merits: Innocent Purchaser: Waiver.** The petition to review or to set aside a judgment obtained upon constructive notice which complies with the statutory requirements may be considered both a petition for review, and a petition to set aside a judgement for fraud obtained in a prior suit to quiet title; and if the court, in the suit to review, proceeds without objection, to try on its merits an independent suit brought by the same defendant, who alleges that the judgment against him in the original suit was obtained by fraud and that the defendant in the independent suit was not an innocent purchaser from the purchaser at the execution sale under that judgment, both suits being consolidated without objection, the formality, that said independent suit could only be tried in the original suit, is waived.

3. **JUDGMENT: Satisfaction: Sale: Innocent Purchaser.** If the judgment or execution has been satisfied prior to the sheriff's sale under execution, the sale is a nullity, and there can be no innocent purchaser at such sale, and it is immaterial whether the purchaser knew of such satisfaction before he bought the property.

4. **———: Foreign: Satisfaction After Suit Brought in This State:**

Chilton v. Cady.

**Notice: Innocent Purchaser.** The satisfaction in full of a judgment rendered in the court of anothed state, after suit has been brought on it and judgment obtained in Missouri, is a satisfaction and extinguishment of both judgments. It is immaterial where the judgment is paid. And it is immaterial that the plaintiff, who satisfied his judgment obtained in the foreign state, did not notify his attorney in this State, that the judgment had been paid; the judgment creditor was the proper party to receive the notice. The foreign judgment having been satisfied before sale under execution upon a judgment obtained in this State, the purchaser at such sale was not an innocent purchaser and obtained no title.

5. ——: ——: ——: **Sale to Pay Costs.** A sheriff's sale to pay a foreign judgment previously satisfied in full cannot be upheld on the ground that it was also a sale to pay costs on a judgment obtained in this State in a suit on said foreign judgment brought before said foreign judgment was satisfied. The purchaser at the execution sale is bound to take notice that the judgment has been paid, in whole or in part; and if the property is sold to satisfy a substantial part which has already been paid, as well as to pay the costs in the Missouri suit, he obtains no title.

6. ——: ——: **Allegation of Satisfaction When Suit Was Brought: Variance: Waiver.** Where the foreign judgment was satisfied after suit thereon was brought in this State, and after judgment here was obtained, but before sale under execution, an allegation, in the suit to set aside the sale and annul the sheriff's deed, that the foreign judgment was paid at the time judgment thereon was rendered in this State, will not prevent recovery, where no affidavit was filed by defendant that he was thereby misled to his prejudice, but the variance between the pleading and the proof will be deemed waived and immaterial.

7. ——: ——: **Innocent Purchaser: Possession as Notice.** The grantee of the purchaser at a sheriff's sale made upon execution under a judgment which has been satisfied, is not an innocent purchaser, if at the time he received said deed the judgment debtor and his family were in possession of and resided upon the property; for such possession is notice that the execution sale was void, and that his grantor had not acquired the title.

Appeal from Greene Circuit Court.—*Hon. Orin Patterson*, Judge.

AFFIRMED.

*W. J. Orr* for appellants.

(1) An allegation in plaintiff's petition that defendant is a non-resident of Missouri authorizes the clerk of the court to issue an order of publication directed to defendant, and authorizes rendition of judgment in the cause upon such publication. The validity of the service does not depend upon the fact of non-residence of the defendant. If the allegation is made in good faith the service thereby had is unimpeachable. Sec. 1196, R. S. 1919; State ex rel. v. Clarkson, 88 Mo. App. 558; Payne v. Lott, 90 Mo. 681; Tooker v. Leake, 146 Mo. 433; Truman v. Chilton, 197 S. W. 346; Simms v. Thompson, 236 S. W. 876. (2) No distinction can be made between judgments rendered by default on constructive service and those rendered on personal service as to their validity, except that in the former case a defendant has the right to petition the court for review of the judgment by motion filed in the same cause, within three years after judgment rendered. If the judgment is set aside the cause is tried *de novo,* as if no prior judgment had been rendered. But this remedy, authorized by Sec. 1532, R. S. 1919, is limited to a motion in same cause, and is wholly different from a suit in equity to vacate a judgment for fraud. Sec. 1532, R. S. 1919; State ex rel. v. Clarkson, 88 Mo. App. 553; Jones v. Driskill, 94 Mo. 199; Simms v. Thompson, 236 S. W. 876. (3) In order to vacate a judgment for fraud it must be proven to the court that the judgment was obtained or procured by fraud. A judgment can never be set aside for fraud or any other matter which could have been pleaded as a defense to the action, unless there was fraud resorted to in procuring the judgment. McDaniel v. McDaniel, 242 Mo. 176; Irvine v. Leigh, 124 Mo. 364; Howard v. Scott, 225 Mo. 709; Railroad v. Mirrielees, 182 Mo. 140; Hamilton v. McLean, 139 Mo. 685. (4) The allegation in the petition in an action to try title to land that plaintiff is owner of the land, and that defendant has no title thereto, but merely claims title adversely to plaintiff, is the issue to be

tried in such cause, and cannot be regarded as fraud in procuring a judgment, even if in fact plaintiff was in error as to the title to the land being vested at the time in him. Shemwell v. Betts, 264 Mo. 268; Wolfe v. Brooks, 177 S. W. 337; Gallagher v. Chilton, 192 S. W. 409; Truman v. Chilton, 197 S. W. 346. (5) The rule of former adjudication (former adjudication was pleaded in this cause) applies to actions to try title to land the same as to other actions, and a judgment of court having jurisdiction of the cause and of the parties adjudicating, quieting and defining the title to land, is final and binding upon all the parties to such action, and their privies. Simms v. Thompson, 236 S. W. 876; Shemwell v. Betts, 264 Mo. 268; Wolfe v. Brooks, 177 S. W. 337; Truman v. Chilton, 197 S. W. 346; Gallagher v. Chilton, 192 S. W. 409.

SMALL, C.—The above two cases were consolidated and tried as one case. The case of Chilton v. Cady is a suit in ejectment, and Cady v. Randell is a suit in equity to set aside a sheriff's sale and judgment to quiet title. The land involved is 320 acres in Shannon County, where the suits were originally brought.

The answer in the ejectment suit is substantially the same as the petition in equity, and both cases present the same issues.

The amended petition of Cady v. Randell was filed February 16, 1920, in the Circuit Court of Shannon County. The petition of Chilton v. Cady was filed February 4, 1920, in said county. Change of venue was taken by agreement of parties in both cases to the Circuit Court of Greene County.

The petition in the case of Cady v. Randell alleged, in substance, that plaintiff was the owner and in possession of said land since the 19th of November, 1917, and that defendant, Randell, claiming some interest therein, on the 28th of June, 1919, filed suit in the Circuit Court of Shannon County, Missouri, against defendant and various parties to quiet title to said land, and in the petition and affidavit attached thereto stated that plaintiff was a

Chilton v. Cady.

non-resident of the State of Missouri, which was not true, but absolutely false, for, in fact, the plaintiff was, at the institution of said suit, a resident of said Shannon Countty, Missouri, and resided on the land in controversy, and has since resided there. That said action to quiet title was brought by said Randell to defraud the plaintiff, and in furtherance of such design he caused the notice of publication to be published in the Winona Democrat, an obscure newspaper published in said county, knowing that plaintiff would not see it. That at the September term, 1919, of said court, defendant, Randell, took judgment against the plaintiff in said suit to quiet title, whereby he attempted to divest plaintiff of all right and title to said land and vest the same in said Randell. That plaintiff had then, and has now, a meritorious defense to said action. That plaintiff prays that said judgment, divesting his title to land, be set aside and for naught held, and for such other and proper relief as to the court may seem just.

Plaintiff for another cause of action, says, that at the January term, 1919, of said Shannon County Circuit Court, said Randell, representing the attorney for one Hinkle, became the purchaser of the land by virtue of a special execution, issued on a pretended judgment rendered at the September term, 1918, of said court against the plaintiff, and in favor of one S. J. Hinkle, based upon a foreign judgment, when the said Randell and his attorney well knew, at the time, that said foreign judgment had been fully paid, and plaintiff owed said Hinkle nothing by virtue thereof. That said pretended purchase by said Randell of said lands at the January term, 1919, of said court, was with full knowledge of all the conditions above referred to, and was done for the purpose of defrauding plaintiff and procuring title to his land without any consideration. That at said sale, said Randell for himself, and the attorney for Hinkle, bid off 240 acres thereof in controversy, of the value of $3500, for the inadequate price of $77. Wherefore, plaintiff prays that said sheriff's deed to said Randell be set aside and

for naught held, and for such other and further relief as to the court may seem proper. This petition was duly verified by the plaintiff.

The petition in the case of Chilton v. Cady was an ordinary petition in ejectment. The answer of Cady thereto was in substance the same as his petition in the suit in equity brought by him against Randell, with the further statement that Chilton was merely the agent of Randell, and had full knowledge of all the matters affecting the title of said Randell at the time Chilton procured his deed from Randell, at which time, the defendant, Cady, was also in the actual possession of the land. The prayer of the answer was that Chilton's title be divested, and that title to said land be vested in the defendant, Cady.

The answer of Randell in Cady's suit against him, and the reply of Chilton in his suit in ejectment against Cady, tendered issue and set up the purchase at the sheriff's sale and the judgment to quiet title, as a bar to Cady's interest in the land.

The files of the attachment suit were introduced in evidence. The petition, filed July 11, 1918, stated Hinkle obtained judgment in Lincoln County, Colorado, on June 20, 1918, against Cady for $1066, together with costs and attorneys' fees in the sum of $200.65, making a total of $1,266.65, and interest, "which had not been paid and for which, $1,274.65," plaintiff, Hinkle, asked judgment. The writ of attachment issued and levied the same day was for $1,274.65. Service was by publication and judgment by default was rendered September 10, 1918, at the regular September term of said court, for $1,287.40, being the total amount, including attorneys' fees and interest of the Colorado judgment.

It was further adjudged that the clerk make out and deliver to the sheriff a certified copy "of this order and decree herein, together with a special execution directing the sheriff to forthwith levy upon defendant's [Cady's] right in said land," and that the same be by him sold at the next regular term of the court for the purpose of

satisfying said judgment and costs. The sheriff's sale was made January 14, 1919, and the sheriff's deed recited $283.76 as the amount bid by Randell. The sheriff's deed to Randell was based upon the judgment and order of sale in the attachment case.

There was no credit upon the order of sale of any payment, and the advertisement presumably stated that the land would be sold for the amount of the judgment and costs. At the sale, however, the sheriff announced that all of the judgment and special execution had been paid except $283.76, for which he would proceed to, and did, sell the property.

The petition in Randell v. Cady, the suit to quiet title,- was filed June 26, 1919. The service was by publication, based upon an affidavit by Randell, that defendant, Cady, was a non-resident of the State. Judgment was rendered by default therein on September 12th, being the September term, 1919, of said court.

It was stipulated that Cady was the common source of title.

Randell's deed to Chilton was a warranty deed dated January 26, 1920, and recorded January 28, 1920.

Cady testified at the trial that there was a judgment against him in Colorado in favor of Hinkle, rendered in June, 1918, where he, at the time, resided. That it was for $1,266.65; that he paid it all. He introduced a certificate of the clerk of the Colorado court, duly certified under the Act of Congress, showing that said judgment was satisfied "as appears from the records in said court." The certificate of the clerk was dated December 14, 1918. That on June 26, 1919, he was living upon the land in Shannon County in question, and living there when the notice of publication in the Randell suit to quiet title was published. He had no personal knowledge of the pendency of this suit to quiet title. He first learned of said suit, and of the judgment rendered therein, in February, 1920. He lived on the land in January, 1920, when the deed from Randell to Chilton was executed. At the time it was sold by the sheriff in the at-

tachment proceedings, the land was worth about $3500; it was in three different tracts; 160 acres was about three-quarters of a mile from the other in another section. He first learned of the judgment in the Hinkle attachment suit in Shannon County from a letter from Mr. Beeler, attorney for Hinkle. Part of the land was farming land; it was divided into two separate tracts.

The letter from Mr. Beeler was introduced. It had no date. It was from Mr. Beeler, while in the army at Camp Pike in Arkansas. He was Hinkle's Colorado attorney. Beeler stated that S. A. Cunningham of Eminence, Missouri, who assisted him as attorney for Hinkle, advised him that Missouri land would be sold about January 1st, unless the judgment was satisfied. That he understood the land was worth more than the judgment. That the amount of the judgment was for $1066.65, and costs amounting to over $200. He did not know what the costs in Missouri were. That he wrote to notify him so that he could save the land.

Cady further testified that, as soon as he got this letter from Beeler, he had his lawyer, Mr. Reid, write to Mr. Cunningham, that the judgment had been paid.

John T. Bay, Sheriff of Shannon County, testified: That he sold the land under special execution in the attachment proceedings on January 14, 1919, to C. L. V. Randell. Cunningham was elected to the Senate. He wanted Randell's attention called to this sale, if it was not paid off on or before the day of sale. Cunningham said there was $283.66 still unpaid on the judgment. The judgment had been settled somewhere, Colorado perhaps, and there was a balance of attorneys' fees, $206.65. The execution was for the full amount of the judgment. Randell's bid was $283.76. He paid witness $77.11; he was to settle the balance with Cunningham. "I returned the execution this way: 'I therefore return the execution not satisfied' to the circuit clerk, January 14th, 1919. I announced at the sale that there was only $283 against the land. Nobody bid but Randell. I offered the land in 40-acre tracts, clear through, and no bids appear-

ing, Randell bid $283.76. The return on the execution showed a payment of $77 and no more. Randell has bought thousands of acres at sheriff's sales. He was engaged in the banking business and saw-mill business. Cunningham left a note here to see Randell before the land went to sale. The paper published at the county seat of Shannon County is the Current Wave. The land sales are equally divided with three papers. But I usually, if left to my election, advertise in the Current Wave; it has a bigger circulation. The paper at Winona has a smaller circulation.''

S. A. Cunningham testified: He got the Colorado claim against Cady from Charles H. Beeler, attorney of Hugo, Colorado. Never had any communications from Hinkle. He notified Beeler the next day after he took the judgment. Reid, Cady's attorney, wrote to the clerk of the Shannon County court, and the letter was referred to the witness, who answered it on the 27th day of December, 1918. (Witness's letter called for by bill of exceptions, but is absent therefrom). ''In January I received a letter from Mr. Reid, after court was over in Shannon County, or the latter part of the week the court was in session. When the land was sold at the January term, 1919, I was in the Senate. I believe it was after the sale had taken place, that I received Mr. Reid's letter. Made no arrangements with anybody to buy it in for me. Before I left Eminence, I understood, that there was a little over $200 attorneys' fees that hadn't been paid, also $77 or $78 of court costs in Shannon County, and in order to make the attorneys' fees that was going to Mr. Beeler and myself, and the costs in the suit, I suggested to Mr. Bay, the sheriff, that he call Mr. Randell's attention to that sale, as I knew Mr. Randell was in the habit of buying land at public sales, and would make it bring that money. I would have made it bring that, if I had been there. After I got back from Jefferson City, Randell paid me $206.65, and I mailed Beeler a check for $103.33. That check was paid. Mr. Randell did not buy the land for me. I had no interest in the

land, after he bought it.    Mr. Randell bought the big end of the land that has been sold by public sale in Shannon County for the last ten years.   I brought the suit for Randell to quiet title.   I thought Cady lived in Colorado.   Never knew he lived in Shannon County until last January.   About 5,000 acres of land was embraced in that suit to quiet title, practically all the people who own land in Shannon County bring blanket suits.   Expect, on an average, seventy-five per cent of land in Shannon County is wild land.   Don't suppose that Randell knew the Cady land was included in the suit to quiet title. Think more orders of publication were published in the Winona Democrat than either of the other papers.    In this particular case Mr. Randell told me to send the publication to Winona; that Mr. Lewis had given him twenty-five per cent off.   Chilton had been dealing in wild lands. I included the Cady land in the suit to quiet title, because Mr. Jamison, the abstracter, told me he was down there inquiring about this suit and had ordered an abstract, so I knew he was figuring on it, and I did not know what his object was.   The fact that he claimed through this letter from Reid, before the sale, that they had paid the judgment out there, and then him being down looking at it, I suppose some question might come up.   The judgment was for $1066 in Colorado, together with costs, making $1266.65.   I supposed when Mr. Reid wrote me, he had probably paid Mr. Hinkle his judgment.

Adlai J. Jamison testified:   That he was an abstracter.   Cady came to his office in Eminence, Shannon County, and ordered an abstract for the land in dispute.   He brought the abstract down to date.   That was in the latter part of October, 1918.   "I believe there was a notice *lis pendens* and an abstract of attachment.   I sent the abstracts to him later, one in December, and one in early part of January, 1919.   I showed him these entries on the abstract books, when he was there the latter part of October, 1918.   I sent them to some town in Colorado.   The first abstract was dated December 15, 1918, and the second the 22nd of January."

J. W. Chilton testified: That he was a lawyer and traded in real estate in Shannon County, and had a half interest in the Shannon County Democrat, published at Winona. Its local circulation was about the same as the Current Wave, published at the county seat. Each paper had between four and five hundred circulation. Winona was 12 miles from the county seat. The land in question is closer to the county seat than to Winona. Never saw the land. Traded Mr. Randell some land in Butler County for it in January, 1920. Never saw it before witness traded for it. "I knew generally about what the lands down there were worth. Randell didn't say anything about its being in cultivation, and I didn't ask him. I assumed that it was unimproved land. Didn't know anything about the judgments in the case of Hinkle v. Cady having been paid before the sale. Didn't know Cady lived in Shannon County until just a little while before I brought the ejectment suit, when I found out that Cady was on it. Randell has no interest in the land. I have a waranty deed for it. It's mine. I traded him about 220 acres of land in Butler County. It is nearly one hundred miles from Shannon County. Didn't have any abstract for the land. Didn't go to see whether anybody was living on it or not. Traded for it in January, 1920. The property I traded Mr. Randell was worth $5 to $10 an acre; the whole ought to be worth $1200 to $1500. Don't know what the land in suit is worth." (It was admitted by the parties, that the judgment sued on in Shannon County was the same judgment rendered against Cady in the Colorado suit).

Randell was not a witness in the case.

The court took the cause under advisement, and at the May term, 1921, rendered judgment in favor of Cady, in both the equity suit and the ejectment suit, from which the opposite parties, Randell and Chilton, duly appealed.

The respondent Cady filed no brief and made no appearance in this court. His attorney of record died after the appeal was taken, and probably before he was required to file brief herein. Whether respondent had per-

sonal knowledge of the setting of this case in this court, either before or after death of his counsel, does not appear.

I.   As to the setting aside of the judgment in the suit to quiet title:   Said judgment being rendered on service by publication could be set aside by petition for review showing good cause for setting it aside within three years after its rendition.   Sections 1532 to 1539, Revised Statutes 1919, provide for such petition for review.   It must "show good cause" for setting aside the judgment (Section 1535); that "the petition, upon which the judgment complained of was obtained, is untrue in some material matter, . . . or that he has, and then had, a good defense thereto, setting forth said defense, or both, and then only on condition that the defendant answer or demur to the petition of the plaintiff on which the judgment was rendered within a reasonable time, to be ordered by the court.   Such petition for review shall be verified by affidavit of defendant, or his attorney of record."   Section 1536 requires "the petition of defendant shall be served on the plaintiff in the judgment" in like time and manner, as in case of an original petition upon a defendant.   Upon the retrial, "the cause shall proceed, as it would have done, had the defendant appeared" and tried the case in the first instance.

*Petition for Review.*

Section 1539 provides, that the setting aside of the judgment at the retrial shall not affect any conveyance of property for the satisfaction of any judgment regularly made, if the property shall be in the hands of innocent purchasers.

We see no reason why the petition of Cady v. Randell may not be considered a petition for review, as well as a petition to set aside the judgment in the suit to quiet title case for fraud.   It is not necessary to allege or show fraud in a petition for review.   [Irvine v. Leyh, 102 Mo. 200.]   It is true, the statute contemplates the retrial of the case on its merits, if the petition for review is sufficient, in the original case between the

*Waiver.*

parties. But we do not think this is the substance of the statute. Cady's independent suit against Randell charged all the matters required in the petition for review, it was duly verified by affidavit, process was issued and served on Randell, as in ordinary cases—all as required in case of a petition for review. The statute is highly remedial, intended to give a defendant, against whom judgment has been rendered on service by publication by default, an actual day in court, and not a mere formal one, before his property is taken from him by a judicial decree. It, therefore, should be liberally construed to promote the beneficent purpose of the Legislature.

Furthermore, as the court proceeded to try the merits of the case in the independent suit brought by Cady, without objection that it could only be tried in the original case, that formality was waived by Randell and by Chilton, whose ejectment suit was consolidated with Cady's suit against Randell, and both cases were tried as one case.

II. Was the sheriff's sale, under the judgment and order of sale in the attachment case, void as to Randell?

Innocent Purchaser.    We think it was, because the judgment in the attachment suit was satisfied before said sale was made.

(a) It is the settled law in this State that if a judgment or execution has been satisfied, prior to the sheriff's sale under the execution, the sale is a nullity, because the judgment and execution are extinguished by such satisfaction. There can be no innocent purchaser in such case. It is immaterial whether he knew of the satisfaction before he purchased the property; he secures no title by virtue of such purchase. [McClure v. Logan, 59 Mo. 234.]

Satisfaction of Judgment.

(b) We are satisfied from the evidence in this case that the Colorado judgment was paid after the Missouri judgment in the attachment suit was rendered. The certificate of satisfaction made by the clerk of the Colorado

298 Mo.—8

court was dated December 14, 1918. There is no other evidence fixing the date at which it was paid. The Missouri judgment was rendered September 12, 1918. It is immaterial whether that judgment was paid in Missouri or in Colorado. If A has two judgments against B for the same debt, a satisfaction of one judgment is a satisfaction of both. [Lockhart.v. McElroy, 4 Ala. 572.]

*Foreign Judgment.*

Cady's testimony and said certificate of the clerk of the Colorado court show that the judgment there was paid in full. It was for $1066.65, principal, and $200 attorneys' fees, making a total of $1266.65. It bore interest at eight per cent. The suit and judgment in Missouri were for the same amount. It was admitted at the trial that the judgment paid in Colorado was the same judgment upon which judgment was obtained in Missouri. The payment of it in Colorado, as shown by the evidence, must have been intended as a satisfaction of both judgments by Hinkle. That he did not notify his Missouri attorney of such payment is immaterial. The client was the proper party to receive the satisfaction of the judgment.

We hold that said sheriff's sale was void, and Randell obtained no title thereat.

III. But it may be said that Cady did not pay the costs in the Missouri case, amounting to $77, and that the sale could be made for the unpaid costs. But the answer to this is, that the sale was not only made to pay the $77 in costs, but to pay $283.76, which included $200 of attorneys' fees for which both the Missouri judgment and the Colorado judgment were rendered and which was paid to Hinkle or his representatives in Colorado. The purchaser, Randell, was bound to take notice of how much of the judgment had been paid, and could obtain no title, if the property was sold to satisfy a substantial sum, which had already been paid on the judgment. This must follow from the ruling in McClure v. Logan, supra.

*To Pay Costs.*

IV. It may be suggested that the pleadings of Cady alleged that the Colorado judgment was paid at the time judgment was rendered thereon in Missouri, and, therefore, he cannot recover on evidence that the Missouri judgment was paid after it was rendered, and before the execution sale. But, as no affidavit was filed that either Chilton or Randell was misled thereby to his prejudice, such variance between the pleadings and the proof will be deemed waived, and not material. [Sec. 1272, R. S. 1919, and cases cited in the notes thereto.]

*Variance.*

V. Was Chilton an innocent purchaser from Randell? We hold that he was not. He purchased the property and procured his deed January 26, 1920, at which time, and for nearly a year before, and ever afterwards, the evidence shows that Cady and his family were in possession of and resided upon the property. He, therefore, purchased with full notice of all of Cady's rights, and was not a bona-fide or innocent purchaser. [Jones v. Nichols, 280 Mo. l. c. 668-9, 216 S. W. l. c. 965-6, and many cases cited.]

*Possession as Notice.*

He, therefore, did not come within the protection of the general principles of equity or law relating to bona-fide purchasers of real estate, nor within the protection afforded innocent purchasers by Section 1539 of the Revised Statutes relating to petitions for review.

We hold, therefore, there was no error committed by the lower court in its judgment in the consolidated case of Chilton v. Cady and Cady v. Randell, or either of said cases.

Let the said judgments be affirmed. *Lindsay, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.