## HENRY E. EVARTS et al., Appellants, v. MISSOURI LUMBER AND MINING COMPANY.

**Division One, February 22, 1906.**

1. **TAXES: Payment: Sale, Nevertheless: Collateral Attack.** A judgment in a tax suit cannot be collaterally attacked (as, for instance, by a suit to quiet title) by one who was a defendant in that suit, and who was properly brought in by personal service or by publication; nor can the title of a purchaser under such a judgment be defeated by showing that the taxes, for which the judgment was rendered, had been paid before the institution of the suit, before the judgment was rendered or before sale under the judgment.

2. **———: Judgment: Party to Suit: Collateral Attack.** Whether or not a party collaterally attacking a judgment for taxes and a sale thereunder was a party to the tax suit, is always a question for consideration. If the attacking party was not a party to that suit, either by not having been made a party thereto or because the steps taken to bring him in were insufficient to accomplish that end, then the judgment is not binding on him—no more than a judgment in any other civil case would be.

3. **———: ———: ———: Non-Resident: Affidavit.** A petition alleging that defendant is a non-resident need not be supported by affidavit, whether the suit be one for collecting taxes or any other kind of civil suit.

4. **———: ———: ———: ———: Initials of Owner: Unrecorded Deed.** A deed was made to Henry E. Evarts and Mary Evarts, the plaintiffs, in 1885, but was not recorded until 1900. The order of publication in a tax suit begun in 1896 for taxes for

193 Sup——28

1892, was directed to H. E. Evarts, and the taxes were assessed to H. E. Evarts. The tax attorney who brought the suit knew that plaintiffs were the owners. They were non-residents, and Henry E. Evarts had done nothing to induce any one to believe that his name was H. E. Evarts. *Held*, that, in order to bring him into court by an order of publication, he should have been notified by his full Christian name and surname, and the judgment and sale thereunder were void, and can be shown to be in a collateral proceeding.

5. ————: Payment: Judgment and Sale, Nevertheless: Fraud. The fact that the tax attorney knew that the taxes had been paid before he instituted suit, and that he had been told by the collector not to bring the suit, and that, after suit brought, he entered upon the delinquent tax book that the suit was against other persons who were not owners, and that he received a part of the printer's fee and that it was to obtain his portion of that fee that he brought the suit, will not alone, if the tax deed was made to an innocent third party and not to him, authorize the court to set aside the judgment as having been obtained by fraud. His conduct did not prevent the defendant from interposing the objection that the taxes were paid, and hence the suppression of that fact was not a fraud in the concoction of the judgment. Therefore, as the innocent purchaser or the negligent owner must suffer, the sale will not be set aside on that ground.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. Chilton* for appellants.

(1) The statute law of Missouri contemplates and intends that the payment of taxes due on land shall extinguish the tax lien, and that a sale of such land through the fault of the collector for taxes which have been paid shall not deprive the owner of his land. R. S. 1899, secs. 9266, 9329; Hubert v. Pickler, 94 Mo. 387. (2) The existence of the tax debt is what creates the lien and gives jurisdiction to sell the land; so that if payment or tender of the taxes due be made, thenceforth the tax lien is discharged and the power to sell the land at all ends. Hoge v. Hubb, 94 Mo. 503; Harness v.

Cravens, 126 Mo. 233; City of Aurora ex. rel. v. Lindsay, 146 Mo. 518; Black on Tax Titles (2. Ed.), sec. 156; McClure v. Logan, 59 Mo. 234; Bennett v. Hunter, 19 Gratt. 100; Doe v. Bufford, 26 Wis. 194; Kingsworthy v. Austin, 23 Ark. 375. (3) There is no difference, so far as this question is concerned, between a tax lien and a mortgage lien. Payment of the amount due thereon extinguishes the lien and any sale thereafter is void and without the jurisdiction of the court, and passes no title. Harness v. Cravens, supra; Thornton v. Bank, 71 Mo. 233; Jackson v. Crafts, 18 Johns. 110; Kortright v. Cady, 21 N. Y. 343; Almstead v. Tarsney, 69 Mo. 399; Edwards v. Ins. and Loan Co., 21 Wend. 467. (4) And when taxes on land have been paid to the collector, the obtaining of a judgment against such land for such taxes by such collector or his tax attorney is a fraud upon the court, and such judgment is void. In the case at bar the conduct of the tax attorney was reprehensibly fraudulent, as shown by the evidence, and that of the collector was so sublimely stupid as together to call loudly for the intervention of a court of equity. The judgment of the court should therefore have been for plaintiffs on this ground if upon no other. Harness v. Cravens, supra; Hampton v. McClanahan, 143 Mo. 501; City of Aurora ex rel. v. Lindsay, supra. (5) A suit brought against a nonresident by order of publication wherein there is no personal appearance by defendant, must be brought against such defendant by his proper name. It will not be sufficient to sue him by initials only, unless defendant has, by some act of his own, authorized the name by his initials merely. Hence the court erred in refusing plaintiffs' instruction 5. Vincent v. Means, 184 Mo. 344; Spore v. Ozark Land Co., 186 Mo. 656; Gillingham v. Brown, 187 Mo. 181; Skelton v. Sackett, 91 Mo. 377; Singleton v. Turner, 151 Mo. 100; Steimann v. Stremple, 29 Mo. App. 484. It is the duty of the collector to sue the real owner as

against the record owner of land, in tax suits, if he have notice of the real owner's ownership thereof. Vance v. Corrigan, 78 Mo. 94; State ex rel. v. Sack, 79 Mo. 661; Cowell v. Gray, 85 Mo. 169. And if the collector has notice of the claim and ownership of land on which he sues for taxes, but does not know claimant's correct name, he should either ascertain the owner's name or sue him as an unknown party, as provided in section 5C0, Revised Statutes 1889. Meyers v. McRay, 114 Mo. 377. A sheriff's deed is void and passes no title to the purchaser when founded on a judgment wherein the court failed to obtain jurisdiction over the person of the defendant, even though the suit be also against the record owner of the land. Meyers v. McRay, 114 Mo. 381. (6) The rule of *caveat emptor* applies in all its vigor to purchasers at tax sales. Black on Tax Titles (4 Ed.), pp. 53 and 68; Rowe v. Land & Cattle Co., 99 Mo. App. 158; Petring v. Land & Cattle Co., 85 S. W. 933.

*John C. Brown* for respondent.

(1) The fact that the taxes for which the land was sold had been paid does not invalidate respondent's sheriff's tax deed. Hill v. Sherwood, 96 Mo. 125; Jones v. Driskill, 94 Mo. 191; Gibbs v. Southern, 116 Mo. 218. (2) Appellant, Henry E. Evarts, is estopped from disputing the validity of the order of publication wherein he was notified as "H. E. Evarts." Mosely v. Reily, 126 Mo. 124; Turner v. Gregory, 151 Mo. 106. (3) Appellants having failed to place their deed on record before the tax suit was instituted were not necessary parties to that action. Vance v. Corrigan, 78 Mo. 94; State ex rel. v. Sack, 79 Mo. 661; Cowell v. Gray, 85 Mo. 169. (4) The judgment is for the right party and should be affirmed. Schmidt v. Neimeyer, 100 Mo. 209; Jones v. Driskill, 94 Mo. 191; Allen v. McCabe, 93 Mo. 138; Gibbs v. Southern, 116 Mo. 204; secs. 924, 9206, 9305,

R. S. 1899; sec. 219, p. 1206, Wag. Stat. 1872; Laws 1872, p. 114; Bisp. Prin. of Eq. (2 Ed.), sec. 259.

MARSHALL, J.—This is an action under section 650, Revised Statutes 1899, to ascertain and declare the rights of the parties hereto to lot 3, and the west half of lots 1 and 2, and the east half of lot 4, of the northeast quarter of section 3, and the west half of lots 2, 3 and 4 of the northwest quarter of section 2, all in township 29, range 6 west, in Shannon county, Missouri. There was a judgment for the defendant in the trial court, and the plaintiffs appealed.

THE ISSUES.

The petition alleges the corporate capacity of the defendant, and that the plaintiffs own and claim the fee simple title to the land in controversy, and that the defendant claims an interest therein by virtue of a sheriff's deed purporting to convey the land to one A. E. McGlashen, made in 1896, for alleged delinquent taxes for the year 1892, and that the sheriff's deed, under the tax judgment, is null and void, because the judgment in the tax case was obtained by fraud, and because the court rendering the judgment had no jurisdiction to render the same. The petition further alleges that the plaintiffs have owned the land since 1885, and have paid the taxes thereon ever since then, including the year 1892, which last were paid in the year 1894; that prior to the payment thereof, in 1894, the land had been returned delinquent, by the collector; that in the year 1895 the collector employed one L. L. Munsell to bring suit to enforce the State's lien for back taxes, in Shannon county, and that when the collector delivered to Munsell the back tax book of said county, he noted thereon the fact of plaintiffs' payment of said delinquent taxes on said land, and cautioned Munsell not to bring the action against the plaintiffs' land, for the

reason that all taxes had been duly paid thereon; that Munsell being so employed to bring the back tax suits, entered into an unlawful agreement with the publisher of a certain newspaper in Shannon county, to the effect that Munsell procured orders of publication in cases pending for the enforcement of taxes to be published in said newspaper, and that in consideration thereof the publisher of the newspaper agreed to pay Munsell one-half of all fees realized by him for publishing such notices. That in order to make money unlawfully for himself, and in pursuance of said unlawful agreement, and without letting the back tax book show the filing of a suit against the plaintiffs, Munsell fraudulently brought suit against the plaintiffs' land, for the taxes for the year 1892, and obtained a judgment for said taxes, and caused the land to be sold therefor; that plaintiffs were then, and are now, non-residents of the State of Missouri, and knew nothing of the tax suit, or of the sale under the judgment therein, until five months next before the beginning of this suit, and that the collector and tax attorney knew that the taxes for that year on this land had been paid, and knew that the plaintiffs owned the land, but never caused any process to be served on them, notifying them of the pendency of said suit; that the payment, by them, of the taxes, extinguished the lien of the State for taxes, and that the procurement of the judgment, in manner aforesaid, was a fraud upon the court, and that the judgment and sale were void, and passed no title to the purchaser.

The answer is a general denial, except an admission that the defendant claims title to the land.

The case made is this:

It was agreed that Peter Duffield, the patentee from the Government, is the common source of title, and the plaintiffs introduced a warranty deed from said Duffield to one John M. Stull, dated August 11, 1858, recorded February 12, 1859; also a deed from said Stull to Julius King and T. J. McLain, dated August 6, 1869, recorded

August 20, 1869; also a quit-claim deed from said King to said McLain, dated March.10, 1869, recorded November 14, 1869; also an assignment by McLain to Washington Hyde, as assignee, dated May 27, 1876, recorded June 30, 1876; also a deed from said Hyde, as assignee and trustee of McLain, to Isaac Smith and Job J. Holliday, dated December 27, 1879, recorded January 10, 1880; also a quit-claim deed from said Smith to Holliday, dated January 9, 1880, recorded February 24, 1880; also a quit-claim deed from Holliday to Henry E. Evarts and Mary Evarts, dated July 17, 1885, and recorded April 7, 1900. Thereupon the plaintiffs rested.

The defendant then offered a sheriff's deed purporting to convey the interest of David Wilson, Job J. Holliday and H. E. Evarts in the land to A. E. McGlashen, dated September 17, 1896, recorded September 17, 1896, and said deed recited a judgment for back taxes for the year 1892 against said land, amounting to $8.85, and a sale under said judgment by the sheriff to said McGlashen. The plaintiffs objected to the introduction of said deed because the court had no jurisdiction of the plaintiffs in this case, the defendants in that case, they not having been served with process; also because the court had no jurisdiction of the land, because the taxes on the land for the year 1892 were paid before the suit was instituted, the judgment rendered or the sale made; also because the judgment in the tax suit was obtained by the fraudulent contrivance of the tax attorney, representing the State. In support of those objections the plaintiffs introduced the files in the tax suit. That suit was entitled the State of Missouri, at the relation and to the use of F. M. Chilton, collector of the revenue, etc., plaintiff, v. David Wilson, Job J. Holliday and H. E. Evarts, defendants. Mary E. Evarts, the other plaintiff herein, was not made a party to that suit. The files in the tax case further showed that there was no service of process on any of the defendants, and that the defendants were brought in by an

order of publication, based upon the allegation in the petition that the defendants in said suit were non-residents of the State, and.that no affidavit showing that the defendants were non-residents was filed at any time in that case.  It nowhere appears, from the abstract of the record, that the petition in the tax case was verified. In further support of the objection the plaintiff called as a witness, F. M. Chilton, who testified that from 1891 until March, 1897, he was the collector of the revenue of Shannon county.  He identified the delinquent tax book for the year  1893 and all prior years, called the Consolidated Delinquent Tax Book, and further testified that the land in question was entered on that book as delinquent for the year 1892, but that subsequent to his receiving the book the taxes were paid, and that he marked them paid on the book, and that they were paid to him and that he acounted for  them  in  settlements as collector, and that he instructed the tax attorney not to bring suit therefor.  He further testified that on the delinquent tax book for 1893, H. E. Evarts was entered as the owner of this land, by the county clerk; that, as collector, he had previously had correspondence with Mr. Evarts about the payment of his taxes, but that Mr. Evarts had an agent in the county who generally paid the taxes; that L. L. Munsell was the tax attorney employed by him to bring tax suits, and that he was engaged in the abstract of title business, and in paying taxes for owners of land; that the consolidated back tax book for 1895 again showed the land to be delinquent for the year 1892, and that said book further showed that suit was filed for the collection of said taxes, on the 10th of January, 1896, against David Wilson and others; that said delinquent tax book was made out in 1895 after the plaintiff had paid the taxes for 1892, to-wit, in 1894; that when taxes were paid he indicated the same on the delinquent tax book by making opposite the tract a circle with three cross marks therein; that the delinquent tax book for 1895 did not show who ''the

others" were, who were joined with David Wilson, as the defendants in the tax suit. The witness further identified a tax receipt for the year 1892, showing that it had been paid to him by the plaintiff on the 8th of June, 1894, covering taxes for that year on the land in question. The plaintiffs then introduced said tax receipt in evidence. The defendant objected thereto, because it was no defense to its title or to the tax sale; that it might have been defensive matter to the original tax suit if it had been pleaded, but that after judgment it was not competent evidence to impeach the tax deed to the defendant. The court overruled the objection and admitted the tax receipt.

Plaintiffs also offered in evidence an abstract of title to the land, which was examined and recertified by L. L. Munsell, in 1889, for the purpose of showing that said Munsell, as tax attorney, knew that the plaintiffs were the owners of this land at the time he instituted the tax suit. The court admitted the abstract and found that it was in the handwriting of said Munsell, but that the endorsements on the back thereof of the plaintiffs' names, was not, in the court's opinion, in the handwriting of said Munsell.

Plaintiffs then called Joshua Sholar, who testified that during the year 1896, and until December of that year, he was the editor of the Current Wave, a newspaper published in Shannon county, and that he had an arrangement with Munsell whereby he was to pay Munsell from ten to twenty-five per cent on all amounts received by him for the publication of notices to defendants in tax suits, and that he did so pay such amounts to him.

Plaintiffs then called S. A. Cunningham as a witness, who identified a letter, dated December 23rd, 1901, to Mr. Evarts, which informed him that the land in question had been sold in 1896, for the taxes of 1892. This was for the purpose of showing that this was the first information the plaintiff had of the tax sale.

The defendant then admitted that plaintiffs had paid the taxes on the land for the years 1893 to 1900, inclusive, and that they had offered to pay the taxes for 1901, but found that defendant herein had paid them.

Thereupon the court overruled the plaintiffs' objection to the sheriff's tax deed to McGlashen.

The defendant then introduced deeds showing a conveyance of the land from McGlashen to Rainey, and from Rainey to Weaver, and from Weaver to Corcoran, and from Corcoran to Pollard and from Pollard to the defendant; the last deed being dated October 22nd, 1901, and recorded November 6th, 1901. The defendants then admitted that Munsell had brought tax suits during the years 1893 and 1895, and that he had never brought suits where the mark, heretofore set out, appeared opposite the tract of land; which mark was the method employed by the tax collector to indicate that the taxes had been paid. This was all the evidence in the case.

Thereupon the court entered judgment for the defendant, stating in the judgment that it did so upon the authority of Hill v. Sherwood, 96 Mo. 125. After proper steps the plaintiffs appealed.

## I.

At the date of the institution of the tax suit in 1895, Job J. Holliday was the apparent owner of the land, as shown by the records in the office of the recorder of deeds of Shannon county. The tax suit was instituted against David Wilson, Job J. Holliday and H. E. Evarts. It nowhere appears that Wilson ever had any title to or interest in the land. At that time, the books in the office of the recorder of deeds did not show that H. E. Evarts had any interest in the land. The plaintiffs had purchased the land in 1885, and had been paying taxes thereon either directly to the collector or more usually through their local agent, L. L. Munsell. The taxes for the year 1892 were assessed against H. E.

Evarts as owner. Neither Holliday nor Wilson nor anyone else appeared on the delinquent tax book of 1893 or of 1895, as having any interest in the land. The delinquent tax book for the year 1893 showed that the taxes for the year 1892 were paid by Evarts, on June 28th, 1894. In making up the consolidated tax book for the year 1895 and prior years, the county clerk entered these lands as delinquent for the year 1892, and named H. E. Evarts as owner. In 1893 the collector of the revenue employed Munsell as the tax attorney. Munsell had previously examined the title to these lands, in 1889, and knew that the plaintiffs were the owners thereof, and had made an abstract of title, showing such to be the fact. Before the suit for back taxes was instituted, the plaintiffs had paid the back taxes to the collector, and the collector had instructed the tax attorney not to bring suit for these back taxes. When the delinquent tax book for 1895, and prior years, was placed in the hands of the collector, by the county clerk, and when, by mistake, the county clerk had entered therein that these lands were delinquent for the year 1892, the tax attorney, contrary to the previous instructions of the collector, and with knowledge that the taxes for 1892 had been paid in 1894, instituted a tax suit and entered a note of that fact on the delinquent tax book, opposite the discription of the land, showing that the suit had been brought against David Wilson and others, and without specifying who the others were. The petition in the back tax suit alleged that the defendants were non-residents of the State, and upon this showing, and without any affidavit as to that fact, an order of publication was made by the court, and published in the Current Wave, a newspaper published in Shannon county. The defendants did not appear and the land was sold, on the 10th of September, 1896, by the sheriff to satisfy the tax judgment, and A. E. McGlashen, a third party, became the purchaser, and thereafter the plaintiffs continued to pay the taxes up to and including the year

1900, and offered to pay up the taxes for 1901, but ascertained that defendant had paid them. The defendant became the purchaser by mesne conveyances from McGlashen, by deed, recorded November 6th, 1901. Thereafter, on the 28th of July, 1902, this action was brought.

The first question, therefore, that arises on this record, for adjudication is, whether evidence was admissible in this case to show that the taxes for the year 1892 were paid before the institution of the tax suit, or judgment therein, or the sale thereunder, and thereby to defeat the defendant's title acquired by the tax sale to McGlashen, a third, innocent party.

It will be remembered that although the plaintiffs acquired the title to the land on the 17th of July, 1885, and although they paid the taxes on the land every year thereafter until and including the year 1900, and although the land, during all these years, was assessed to H. E. Evarts, nevertheless the plaintiffs never recorded their deed until the 7th of April, 1900.

The doctrine in this State is that a purchaser at a tax sale, under a judgment for taxes, where the record owner is made the party defendant, acquires good title as against the holder of an unrecorded deed from such apparent owner. [Vance v. Corrigan, 78 Mo. 94; Allen v. Ray, 96 Mo. 542; Payne v. Lott, 90 Mo. 676; Crane v. Dameron, 98 Mo. 567; Lucas v. Land Co., 186 Mo. 448.]

The rule in this State also is that a judgment in a tax suit cannot be collaterally attacked by one who was a defendant in that suit, and who was properly brought in by personal service or by publication, nor can the title of a purchaser under such a judgment be defeated by showing that the taxes, for which the judgment was rendered, had been paid before the institution of the suit, before the judgment was rendered, or before the sale under the judgment. [Hill v. Sherwood, 96 Mo. 125; Jones v. Driskill, 94 Mo. 190; Gibbs v. Southern, 116 Mo. 204.]

Under the law as it existed prior to 1877, when the land was sold by the collector, the law expressly provided that the deed might be invalidated by showing, "first, that the land conveyed by such deed was not subject to taxation at the time of the assessment thereof, under which assessment such sale was made; second, that taxes due thereon had been paid, according to law, before the sale; third, that such land had been duly redeemed, according to law, or that tender of the redemption money had been made before the execution of such deed." [2 Wagn. Stats. 1872, chap. 118, sec. 219, p. 1207.]

In 1877 the law in reference to the collection of taxes was entirely changed and instead of having the county court order the sale of the land, and the collector conduct the sale and make the deed, the act of April 12, 1877, required that suits should be brought, in courts of competent jurisdiction, for the collection of delinquent taxes, and that parties should be brought in in the same manner as was provided by law in ordinary civil actions affecting real or personal property, and that the general laws of the State as to practice and proceedings in civil cases should apply to tax suits as far as applicable. [Laws 1877, p. 386, sec. 6; now sec. 9303, R. S. 1899.]

Thus the whole tax collecting system was changed in this State, and now it is no more competent to impeach a judgment or a title obtained by a sale thereunder, on the ground that the taxes for which the judgment was entered had been paid or that the land was not subject to assessment, or that it had been redeemed, than it would be competent for an ordinary litigant to defeat a judgment, based on a note or other obligation, on the ground that it had been paid before the suit was brought or the judgment entered or the sale thereunder had.

These considerations clearly show the theory of the cases cited which establish the rule above stated. This

rule, however, is based upon the predicate that the party seeking to attack the judgment or the title acquired under it, was properly brought in as a party in the tax suit. Of course, if the attacking party was not a party to that suit, either by not having been made a party thereto or because the steps taken to bring him in were insufficient to accomplish that end, then the judgment is not binding on him. The question, therefore, always is whether or not the attacking party was a party to the tax suit.

In the case at bar the contention of the plaintiffs is that Evarts was not properly brought in as a party defendant in the tax suit, because, although the petition alleged that he was a non-resident of Missouri, there was no affidavit showing such to be the fact. This raises the question, therefore, whether the mere averment or allegation of non-residence in the petition is sufficient to base an order of publication upon, as to the non-resident, or whether there must also be, in addition thereto, an affidavit showing such to be the fact.

It has been above pointed out that section 9303 provides that notices and summons in back tax cases shall be sued out and served in the same manner as in ordinary civil actions, and that the general laws of the State as to practice and proceedings in civil cases shall apply to tax cases as far as applicable. Section 575, Revised Statutes 1899, being the provision of the code in reference to orders of publication in suits, *inter alia*, for the enforcement of liens against real or personal property, provides that, "If the plaintiff or other person for him shall allege in his petition, or at the time of filing same, or at any time thereafter shall file an affidavit stating that part or all of the defendants are non-residents of the State, . . . the court in which said suit is brought, or in vacation the clerk thereof, shall make an order directed to the non-residents," etc., notifying them of the commencement of the suit, etc. In some of the cases may be found language which seems to indicate that

there must be an affidavit stating the fact of the non-residence of the defendant, or that the petition which alleges such non-residence must be verified. A critical analysis of the origin and development of the law in this respect in this State shows, however, that if the petition contains an allegation of non-residence, although the petition is not verified, or if the petition be silent on the subject and an affidavit is afterwards filed showing the non-residence of a defendant, the order of publication must be issued by the court, or clerk in vacation, and that either the allegation in the petition, or the affidavit, is sufficient to authorize the order of publication. Prior to the act of February 24, 1849 (Laws 1849, p. 73), there was no such thing known to the laws of this State as bringing in the defendant in a civil action by an order of publication. The practice act of 1835 (R. S. 1835, pp. 450 et seq.), contemplated bringing in a defendant by a summons, to be personally served on him, or by a capias, and the latter could only be issued where the petition was verified. Thus the law stood until 1849 when, by section 8 of article 5 of that act (Laws 1849, p. 78), it was provided that, ''If any plaintiff, or other person for him, shall file with his petition an affidavit stating that part or all of the defendants are non-residents of the State, the court, or clerk in vacation, shall make an order directed to the non-residents, notifying them of the commencement of the suit,'' etc. Thus the law stood until the revision of 1855, when it was changed so as to read as follows: ''If any plaintiff, or other person for him, shall allege in his petition, or file an affidavit stating, that part or all of the defendants are non-residents of the State, the court, or clerk in vacation, shall make an order directed to the non-residents, notifying them of the commencement of the suit,'' etc. [Sec. 13, art. 5, chap. 128, p. 1224, R. S. 1855.] In the revision of 1865 the order of publication was authorized in particular classes of cases, but there was no change from the revision of 1855 as to the alle-

gation in the petition or in the affidavit as to the non-residence. [Sec. 13, chap. 164, p. 655, R. S. 1865.] In the revision of 1879 there was no change. [Sec. 3494, art. 4, chap. 59, p. 597, R. S. 1879.] The revision of 1889 was the same except the language in reference to the allegation of non-residence was changed so as to read: "If the plaintiff, or other person for him, shall allege in his petition, or at the time of filing the same, or at any time thereafter shall file an affidavit stating," etc., and such is the language of section 575, article 4, chapter 8, page 244, Revised Statutes 1899.

Thus it appears that from 1849 to 1855 in order to obtain an order of publication it was necessary for the plaintiff or some person for him to file with the petition an affidavit of non-residence, but since 1855 it has been sufficient for the plaintiff, or some person for him, to allege in the petition, or file affidavit at the time of filing the petition (and since 1889 to file such affidavit at any time after the petition is filed), alleging non-residence. Pleadings in this State are not now required ordinarily to be verified, and such is the fact in reference to tax suits. There is, therefore, nothing in the contention of the plaintiff that the order of publication in this case was issued upon the mere allegation of non-residence in the petition, without the petition being sworn to, and without any affidavit of the fact of non-residence being filed. When the party is properly brought in by an order of publication in a tax suit, the judgment in that suit is as impervious to collateral attack for any defect or imperfection in the service, that is not apparent upon the face of the record in the tax case, as in any other kind of a judgment. [Tooker v. Leake, 146 Mo. l. c. 430; and cases cited; Crossland v. Admire, 149 Mo. l. c. 656; Parker v. Burton, 172 Mo. 85; Cummings v. Brown, 181 Mo. 711; Kelly v. Murdagh, 184 Mo. 377; Land Co. v. Land & Cattle Co., 187 Mo. l. c. 435.]

As was well said by VALLIANT, J., in the case last

cited: "The order of publication serves, as far as it can, the office of the summons; but though a summons may be altogether correct in form it does not avail to bring the defendant into court unless it is served on him according to law. When the law is driven, from the necessity of the case, to authorize a judgment that will affect the property rights of an absent or unknown defendant, on a notice by mere publication in a newspaper, it demands of the plaintiff a strict compliance with the terms of the statute under which the publication purports to have been made." In fact, all through the cases, especially tax cases, runs the thread that a strict compliance with the statute is demanded, and that the court will critically examine every step and feature of the proceeding in order to determine whether the owner of the property has lost his right thereto, and the purchaser at the tax sale has acquired it. In the case at bar, no essential requirement of the law has been neglected, with respect to basing the order of publication upon the allegation of non-residence in the petition, and in not requiring an affidavit to that effect.

## II.

The plaintiffs contend that the order of publication was wholly insufficient and that the title of the purchaser acquired at the tax sale is a nullity, because the order of publication was to H. E. Evarts, whereas his name was Henry E. Evarts.

The court, following the strict rules of interpretation, especially in tax cases, above indicated, has held that while the general rule of law is, that in a notice or process the first or Christian name is necessary to a valid judgment, and the middle name is no part of defendant's name, still in tax cases, if the suit is against a nonresident, in the name by which he has described himself in deeds, even though that be simply initials in place of a full Christian name, the notice is sufficient,

193 Sup—29

but that where the non-resident defendant was simply known as "Vaughn Turner, and was so described in the tax assessment, notice of publication and judgment, when his full name was Singleton Vaughn Turner, by which full name he had been described in a conveyance to him of the land charged with the taxes, the sheriff's deed under the judgment, in the suit where he was simply described as Vaughn Turner, was insufficient to convey the title." [Turner v. Gregory, 151 Mo. 100.]

In Vincent v. Means, 184 Mo. 327, it was held that a judgment against M. C. Vincent, under an order of publication, in a suit wherein he was notified by publication under the name of M. C. Vincent, was void, as against Minos C. Vincent, there being no evidence to show that the defendant had ever received deeds to the land or conveyed the land in the name of M. C. Vincent, and the general rule was announced, "that the first or Christian name of both the plaintiff and defendant in all judicial proceedings should be set forth in full. 'Initials are not a legal part of the name, the authorities holding the full Christian name to be essential.'" But that this rule was subject to exception in cases where the party defendant received deeds or made deeds using only his initials.

In Spore v. Ozark Land Co., 186 Mo. 656, which was a proceeding like this, under section 650, it was held that the judgment for taxes, where the owner was brought in by publication against W. D. Spore, was void, and the purchaser at the sale thereunder acquired no title as against William D. Spore, the deed to the land sold for taxes having described the defendant as William D. Spore.

Gillingham v. Brown, 187 Mo. 181, was an action under section 650. It was held that a judgment in a tax suit against A. H. Gillingham, and a sale under that judgment, were void as against Aubrey H. Gillingham, where the deed which originally conveyed the land to Gillingham described him as Aubrey H. Gillingham.

In the case at bar the deed to the plaintiffs had not been recorded at the date of the institution of the back tax suit. The land was assessed to H. E. Evarts, but the tax attorney who brought the suit knew that the plaintiffs, Henry E. Evarts and Mary Evarts, were the owners. Henry E. Evarts had done nothing to induce anyone to believe that his name was H. E. Evarts. He was a non-resident of the State. The ordinary rules of law, therefore, obtain in this case, that in order to bring him legally into court by an order of publication, he was entitled to be sued and notified according to his full Christian name and surname. Following the principle announced in the cases cited, the judgment and sheriff's deed following the judgment must be held to be void, and to confer no title upon the purchaser at the tax sale.

## III.

It is next contended that the tax judgment is void because of fraud in the very concoction thereof. The fraud relied on consists in the fact that the tax attorney who brought the tax suit had formerly been the agent of these non-resident plaintiffs, for the payment of the taxes on the land in question, and that he knew before he brought the suit that the taxes for the year 1892 had been paid (counsel in the briefs say by the tax attorney himself, as agent of the plaintiffs, but the abstract of the record does not show that to be the fact), and in addition thereto said tax attorney had been ordered by the tax collector not to bring suit for the taxes for the year 1892 against the land in question, because they had been paid. Yet in spite thereof he instituted the suit, and entered on the delinquent tax book that the suit was against David Wilson, and others, thereby not disclosing to the collector, or anyone else, who the others were; and that he did so for the purpose of sharing in the fees that would accrue from the publication of the notice of the suit, and that he did share therein.

There can be no question about the bad faith of the tax attorney in so doing, and in Harness v. Cravens, 126 Mo. 232, a conveyance to the attorney in a back tax case, who became the purchaser at the tax sale, under a judgment for taxes that had been paid before the suit was instituted, was held to be void. That case is not here referred to as establishing the general rule in this State, for, as herein pointed out, the mere fact that the tax had been paid before the suit was instituted or the judgment entered or the sale made, would not defeat the title of the purchaser, or render the judgment void, if the defendant had been properly brought into court, but it is referred to for the purpose of showing that if the tax attorney in this case had been the purchaser at this sale, no court of conscience would hesitate to declare his title void, because of his actions in the premises, but a third—and so far as the record shows, an innocent—party became the purchaser at that sale. This puts a different phase on the case, and distinguishes this case from the case of Harness v. Cravens, where the attorney became the purchaser. Here one of two innocent parties must suffer, and the guilty party is not before the court to receive the punishment he deserves. The plaintiffs were negligent of their rights by not recording their deed to the land until after the tax sale. The purchaser at the tax sale, therefore, had a right to rely upon obtaining the title of the apparent owner, and of getting a better title than that acquired under an unrecorded deed from the apparent owner. The suppression of the fact from the knowledge of the court that the taxes had been paid was not such a fraud in the very concoction of the judgment as made the judgment void. In Hamilton v. McLean, 139 Mo. 678, speaking to this point, BURGESS, J., said: "The fraud must be in the procurement of the judgment, and not simply in the cause of action on which the judgment is founded, and which could have been interposed as a defense, unless its interposition as a defense

was prevented by the fraud of the adverse party."
[See, also, Bates v. Hamilton, 144 Mo. 1.]

The conduct of the tax attorney in bringing the suit
after he knew the taxes had been paid did not prevent
the defendant from interposing a defense of payment to
the suit, and did not, of itself, constitute a fraud in the
procurement of the judgment, there being nothing here
to show that there was any fraud practiced upon the de-
fendant to prevent his interposing that defense.

For the foregoing reasons the judgment of the cir-
cuit court is reversed and the cause remanded with di-
rections to the circuit court to enter a decree in favor of
the plaintiffs.

All concur.