WM. H. JOHNSON TIMBER & REALTY COMPANY, TEN EYCK WENDELL, Trustee, THEDA PYLAND, KATHERINE HURT, W. W. JOHNSON and ROBERT F. HUBBARD v. W. A. BELT, Appellant.—46 S. W. (2d) 153.

Division One, January 5, 1932.

516

*R. C. Ford* for appellants.

*D. F. McConkey* for respondents.

ATWOOD, J.—Respondents were plaintiffs in a proceeding commenced August 29, 1927, in the Circuit Court of Taney County, Missouri, involving title and right to possession of timber land described as the N.E. ¼ S. E. ¼ of Section 26, Township 22, Range 22, in said county. They went to trial on their second amended petition which consisted of a count to ascertain and determine title under Section 1970, Revised Statutes 1919, and another count in ejectment, both in conventional form.

In the first count of their petition plaintiffs prayed "the court to try, ascertain and determine the title and interests of these plaintiffs and these defendants to the said lands, and by its judgment and decree, determine, adjudge, decree, settle, quiet and define the respective rights, title, interests and estates of these plaintiffs and defendants to said real property, and these plaintiffs further pray that if the court finds that these plaintiffs, or either of them, are the sole owners of said real estate, and that the defendants do not own the same, or any part thereof, an order, judgment and decree be made and entered of record, forever barring and precluding defendants, and each of them, as well as all persons claiming title by, through or under said defendants, or any of them, from hereafter setting up or claiming title to said real property; and to quiet and vest the full and complete title in plaintiffs, as the court may find and determine, and for any and all other and further relief as the court may find and determine to be just and proper." Their prayer under the second count was for possession and damages.

Defendants answered the first count with a general denial and allegations that they were the owners and in possession of said land, defendant W. A. Belt having purchased same at a tax sale on November 9, 1908, under a judgment for taxes delinquent thereon

for the year 1905; that he received tax deed therefor and recorded same in the office of the recorder of deeds of said county on April 30, 1909; that immediately after purchasing said land the said Belt went into possession thereof and has been in the open, adverse, notorious, peaceable possession of the same continuously since November, 1908, paying the taxes and exercising all the rights of ownership thereto; that thereafter the said Belt brought suit in the circuit court of said county to the April Term, 1914, against Robert F. Hubbard and Moses McCormick to ascertain and determine title to said land; that on April 29, 1914, said court after hearing said cause rendered judgment therein divesting said defendants of all right, title, claim and interest therein and vesting the fee simple title to said land in plaintiff; that the instant proceeding is a collateral attack upon said judgments; and that plaintiffs herein have been guilty of laches in that they have permitted more than ten years to elapse since the recording of the deed to the said Belt. Defendants prayed judgment confirming said judgment quieting title "and for all other and further just and proper orders and relief in the premises." Defendants' answer to the second count was a general denial and an allegation that they were lawfully in possession of said land, with prayer that said count be dismissed.

Plaintiffs' reply admitted defendants' allegations as to tax sale and deed, and suit and judgment quieting title, and denied generally all of defendants' other allegations of new matter touching the first count of plaintiffs' petition. It also alleged that on May 7, 1907, the then collector of said county through error, oversight and mistake, brought suit in the circuit court of said county against plaintiff Robert F. Hubbard for the sum of $1.07 alleged back taxes due against said land; that on May 2, 1908, a pretended judgment was rendered against said Hubbard for the amount of the alleged back taxes for the said year 1905; that thereafter execution issued based upon said pretended judgment and said land was levied upon, advertised and sold by the sheriff of said county on April 4, 1909, for the purpose of satisfying said pretended and erroneous judgment, and at such sale defendant Belt became the purchaser thereof for the sum of $4, and received a pretended sheriff's deed therefor, which he thereafter placed of record. Plaintiffs' reply further alleged that defendant Belt's judgment purporting to establish title to said land in him is erroneous, null and void, being based upon an erroneous, invalid and void back tax judgment, and upon an erroneous, invalid and void sheriff's back tax deed, and copy of said judgment not having been filed for record in the recorder's office in said county until more than thirteen years after rendition thereof, to-wit, May 11, 1927. Said reply further alleged that on November 22, 1905, plaintiffs paid and discharged all state, county, school, road and all

other taxes and assessments against said land for the year 1905, and now have and hold the tax collector's receipt therefor, and the tax books of said collector's office of said county are so marked paid for said year 1905; that the returning of said land as delinquent by said collector was error, oversight and mistake and not through any knowledge, fault, mistake or laches of plaintiffs; that the said Hubbard was at all times mentioned in defendants' answer and is now a resident of the State of New York; that the service upon him as defendant, in both said tax suit and said title suit, was only by publication, and that he never had or received any real or actual notice or knowledge or information of either of said suits or judgments until a very short time before the commencement of this action.

For reply to the second count, plaintiffs admitted that defendants were in possession of said land, but denied that they were legally and lawfully in possession thereof. Plaintiffs prayed judgment as asked in the first and second counts of their petition, "and for all other and further relief in the premises as may seem to the court to be just and proper under all the evidence produced herein, and for all costs of this action." Defendants' reply to the new matter herein was a general denial.

The case was tried to the court and submitted on stipulation that plaintiff Hubbard was the common source of title, and on the evidence adduced, and judgment was rendered for plaintiffs. W. A. Belt, who had conveyed the land in question by warranty deed to his co-defendants, Henry L. and Nellie M. Wallace, is the only defendant who has appealed.

In their pleadings and at the trial defendants claimed title under both the tax judgment and deed given pursuant thereto to defend Belt and the judgment of the circuit court quieting title in him.

 Appellant insists that plaintiffs' suit was a collateral and not a direct attack upon these judgments, and that plaintiff Robert F. Hubbard, through whom the other plaintiffs claimed title, having been properly served by publication in both suits, defendants' title under the judgments rendered therein is impervious to such attack. Respondents, on the other hand, say that by the provisions of Section 1970, Revised Statutes 1919 (now Sec. 1520, Revised Statutes 1929), under which this suit was brought, they had a right to have the former tax and title proceedings set aside and reviewed by the circuit court; that all such issues were raised by plaintiffs' second amended petition and defendants' answer and plaintiffs' reply, and this suit was a direct and not a collateral attack on these judgments.

This statute is remedial and beneficial and should be liberally construed. [Ball v. Woolfolk, 175 Mo. 285, 75 S. W. 410.] Its object is to give a right of action to any person claiming an estate

in lands, and permit a defendant to set up any defense he may have. [Talbert v. Grist, 198 Mo. App. 492, 499, 201 S. W. 906.] It is as broad and far-reaching in terms as language can make it. [Coal Co. v. Dent, 308 Mo. 547, 274 S. W. 30.] The rules of procedure in suits to quiet title are the same as in other civil actions, and the relief afforded is to be measured by the pleadings in each particular case. [Stewart v. Omaha Loan & Trust Co., 283 Mo. 364, 375, 222 S. W. 808.] Among other things it expressly provides:

"And upon the trial of such cause, if same be asked for in the pleadings of either party, the court may hear and finally determine any and all rights, claims, interests, liens and demands, whatsoever of the parties, or of any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and to each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties, or any one of them, to enforce any such right, claim, interest, lien or demand, and the judgment or decree of the court when so rendered shall be as effectual between the parties thereto as if rendered in any other, different or separate action prosecuted therefor."

Courts of equity have inherent power to set aside judgments obtained by fraud (Irvine v. Leyh, 102 Mo. 200, 206, 207, 14 S. W. 715, 16 S. W. 10), whether actual or constructive. [Clyce v. Anderson, 49 Mo. 37, 41; Howard v. Scott, 225 Mo. 685, 712, 125 S. W. 1158.] Such may be invoked by bill pleading facts necessary to constitute fraud, and, except the statutory method by motion on account of irregularities in the judgment (Sec. 1101, R. S. 1929) and the statutory method of review (Secs. 1081, 1083, 1084, R. S. 1929), both of which are subject to three-year statutes of limitations, we are advised of no other method of setting aside a judgment fair on its face after the term at which it was rendered. However, it is apparent from the above quoted portion of the statute that the same relief that is otherwise available can be obtained in a suit to ascertain and determine title under Section 1520, Revised Statutes 1929, provided, the pleadings as a whole adequately present such issue, and in such case the judgment so assailed should be deemed directly and not collaterally attacked.

It must be borne in mind, however, that the fraud alleged and proved must be in the very concoction of the judgment itself. As said in Irvine v. Leyh, 102 Mo. 200, 206, 207, 14 S. W. 715, 16 S. W. 10, "such is the law at this day, that a judgment will not be restrained or set aside simply because it is based on a cause of action tainted with fraud; the fraud for which a judgment will be vacated must be a fraudulent act in procuring the judgment. If the cause of action is vitiated by fraud, that is a de-

fense, and it must be asserted in the action in which the judgment is rendered, unless its interposition is prevented by the fraud of an adversary. [Payne v. O'Shea, 84 Mo. 129; Smith v. Sims, 77 Mo. 270; Murphy v. DeFrance, 101 Mo. 151; Zellerbach v. Allenberg, 67 Cal. 296.] The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was founded. [United States v. Throckmorton, 98 U. S. 61.] The principle thus so strongly stated in the case cited proceeds upon the ground that the party had an opportunity to appear and interpose the defense in the suit in which the judgment complained of was rendered.'' In Howard v. Scott (1. c. 713), supra, we said, ''that fraud which will overturn a judgment must arise on extrinsic and collateral matters and not on the very issues presented by the pleadings and passed upon at the trial.'' Also, in Rogers v. Dent, 292 Mo. 576, 584, 585, 239 S. W. 1074, 1076, where plaintiff filed bill in equity to set aside a judgment and deed on the ground of fraud, we stated the proof and applied the rule here under consideration, as follows (italics ours):

''With respect to fraud charged, the facts proven were merely these: The taxes for the year 1916 were paid the county collector March 6, 1917; he failed to credit the payment on the tax books, and a year later, through his attorney, instituted and prose·cuted to final judgment a suit for their collection. In due course special execution issued on the judgment; the land was sold thereunder and a sheriff's deed executed to the purchaser. These naked facts do not give rise to the inference that the collector, his attorney and the sheriff each knew that the taxes had been paid and so knowing acted collusively in bringing and prosecuting the suit to judgment and effecting a sale of the land thereunder, in order to secure the fees and commissions incident thereto as charged in the petition. *But if the evidence conclusively established that they acted with conscious knowledge of the fact that the taxes had been paid, it would show merely a fraudulent cause of action and not fraud in the procurement of the judgment, which alone would afford ground for the equitable relief here sought.* [Hamilton v. McLean, 139 Mo. 678.] In this connection it is worthy of note that the chancellor who gave the judgment below set the tax judgment aside, not on the ground of its fraudulent obtention, but because 'the taxes had been paid before the tax suit was filed.' But if the taxes had been previously paid, that was a matter of defense that should have been interposed in the back tax suit. It afforded no ground for setting the judgment aside; courts of equity do not

grant such relief for the purpose of giving the defeated party a second opportunity to be heard on the merits of case. [Shemwell v. Betts, 264 Mo. 268; McDonald v. McDaniel, 242 Mo. 172, 176; Evarts v. Lumber Company, 193 Mo. 433.] And the rule is the same whether the court acquired jurisdiction in the proceeding in which the judgment is sought to be set aside by publication, or by personal service on the defendant. In either case the judgment is unassailable by a bill in equity except for fraud in the very procurement of the judgment itself. [Shemwell v. Betts, supra.]''

In the Irvine case, supra, Judge BLACK, author of the majority opinion, strongly urged that this rule should not ''be applied, in all of its strictness, to a case where the defendant has been brought in by newspaper notice only,'' but a majority of the court did not concur in this view. Later, Judge LAMM, in Howard v. Scott, supra, expressed his own strong leaning to the same view, but felt bound by the majority ruling in the Irvine case. We think the rule thus announced and adhered to in fraud cases, particularly as applied in the Rogers case, is controlling in the instant case as far as plaintiffs' attack on the tax judgment and deed are concerned, even if their pleadings could be construed as charging fraud. The facts pleaded, proved and relied upon by plaintiffs as grounds for setting aside the tax judgment and deed were that Robert F. Hubbard or his agents or attorneys had paid all taxes due on the land in question for the year 1905 and thereafter until 1925, and that the tax book kept in the collector's office showed that the taxes due on the land for the year 1905 were paid on November 22, 1905, more than a year before the tax suit in question was instituted. Such facts alone do not show fraud. Nor were the statutory methods of setting aside a judgment on motion (Sec. 1101, R. S. 1929), or petition for review (Secs. 1081, 1083 and 1084, R. S. 1929) available to plaintiffs, because this judgment was rendered May 2, 1908, the land sold thereunder April 4, 1909, and the tax deed therefor recorded April 30, 1909, and the time had long since expired within which any such proceeding could have been instituted.

Counsel for respondent seem to think that Section 12954, Revised Statutes 1919 (now Sec. 9964, R. S. 1929), ''in cases where the taxes have been paid or the land was not subject to taxation, or has been redeemed as provided by law,'' affords a defendant in a tax suit an unlimited time within which he may sue to recover the land or defeat the sale or conveyance of same. This statute is as follows:

''Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes (except in cases where the taxes have been paid or the land was not subject to taxation, or has

524

been redeemed as provided by law), shall be commenced within three years from the time of recording the tax deed, and not thereafter: *Provided*, that where the person claiming to own such land shall be an infant, or a person of unsound mind, then such suit may be brought at any time within two years after the removal of such disability."

We think the most that can be said of it in this respect is that the period of limitation therein specially provided does not apply in such cases.

Plaintiffs' pleadings and proof attacking the judgment in the title suit likewise fall short of the well recognized requirements in suits to set aside judgments on the ground of fraud in their procurement, and even if, under our liberal interpretation in Witcher v. Hanley, 299 Mo. 696, 701, 253 S. W. 1002, this proceeding could be treated as a statutory review of the judgment, commenced in time under the provision of Section 1134, Revised Statutes 1929, defendants having failed to file copy of the decree in the office of the Recorder of Deeds of Taney County until May 11, 1927, nevertheless, it must fail because the efficacy of the facts pleaded and proved in this behalf depended upon the success of the attack upon the tax judgment and deed which we have held to be futile.

We find no evidence in the entire record to sustain the judgment vesting title in plaintiffs, and for that reason the judgment is reversed. All concur. *Ragland, J.,* concurring in result only.