Richard A. DEWEY, Appellant,

v.

Charlotte M. JENKINS et al.,
Respondents.

No. KCD 28882.

Missouri Court of Appeals,
Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer
Denied June 12, 1978.

Application to Transfer Denied
July 24, 1978.

Gregory C. Lucas, Strop, Watkins, Roberts & Hale, St. Joseph, for appellant.

Don Pierce, Downs & Pierce, St. Joseph, for respondents.

Before SHANGLER, P. J., WASSERSTROM, J., and MASON, Special Judge.

SHANGLER, Presiding Judge.

This suit began as an action to partition the real estate which devolved by law to the three children of the decedent Acle Dewey. One of the three children, Charlotte M. Jenkins, brought a counterclaim which alleged that the decedent father had advanced $11,592.94 to Richard A. Dewey, another of the children, against his inheritance but that through his fraud and deception the advancement was not taken into account at the time of the settlement of the estate. The counterclaimant Jenkins asked the court to offset the advancement to son Dewey in the distribution of the proceeds of the partition sale to the three children, Jenkins, Dewey, and Rovilla Hartman, the other heir.

The reply of son Dewey to the counterclaim asserted two defenses: (1) that the rights of the heirs were conclusively determined by the probate court order of distribution and discharge of administrator which now stands as res judicata to the claim for advancement, and (2) that the claim is otherwise barred by a release of November 26, 1974 executed by all the parties.

At the trial there was evidence by Marion Jenkins, administrator of the Dewey estate, and husband of counterclaimant Charlotte Jenkins, that the estate was closed and his duties discharged on March 7, 1975, but that four months later—on July 3, 1975, he

found a document in the business office of decedent Acle Dewey of an advancement agreement between the decedent and his son, Richard Dewey. The document recited material, labor, and loans in the amount of $11,592.94 received by the son from the father for the construction of a home:

> "The indebted amount above to be cancelled out as Paid by Gift, September 30, 1970, as part of my inheritance which will be determined at a later date."

The signatures of son Richard, his wife Helen, and father Acle Dewey were affixed to the instrument.

The witness Marion Jenkins testified that during the course of administration he had numerous conversations with Richard Dewey as to money he might owe the estate and was told, variously, that he borrowed money from the father to build a house which he then repaid by a bank loan—and, variously, that the money was an outright gift. The wife of Richard Dewey also told him the money was a gift. Richard Dewey emphatically denied there was any writing of the transaction.

Another heir, Rovilla Hartman, sister of Richard Dewey, confronted him with a conversation with the father that he had advanced $12,000 to Richard to be repaid from his inheritance. Richard told her the amount had been repaid, and she believed him and gave the matter no further thought.

The other heir, Charlotte Jenkins, talked to Helen, wife of Richard Dewey, about the possibility that the father had made an advancement of inheritance to Richard. Charlotte asked her sister-in-law whether the money used to build their home was intended as part of the expectation from the estate, but was told with emphasis that the father had been repaid with money from the bank. Charlotte accepted the explanation and dismissed the matter completely.

The decedent, Acle Dewey, was a building contractor during his lifetime and operated as Ace Dewey, Inc. The administrator, Marion Jenkins, testified that their corporate records were not complete, nor did they show how the Richard Dewey house had been paid for completely. This uncertainty led him to inquire of Richard Dewey as to repayment and it was to this inquiry that Richard had given his assurances that he was no longer indebted. The document between Richard and Helen Dewey and Acle Dewey, found after the estate was formally closed, was discovered by Marion Jenkins lodged among some workbooks, and had eluded his diligent searches [as well as those of Helen Dewey whom he trusted to assist him] during his administration of the estate.

There was objection to the testimony of the advancement from the decedent father to son Richard on the ground that such evidence was precluded by the probate court judgment which was res judicata to the issue of advancement which was a demand the administrator could have brought in the probate proceedings. The objection moved that the evidence constituted a collateral attack on a final judgment and should be stricken. The trial court found Richard Dewey had overreached his two sisters by concealment of the fact of the advancement from them. The judgment entered charged Richard with the advancement, divided the proceeds from the partition equally among the three heirs, and then on principles of hotchpot, allocated one-half of the advancement to each of the sisters from the share of the son, and impressed the judgment upon the partition res.

The first point on appeal contends that the counterclaim does not plead a direct action in equity to set aside the probate court judgment, but only a collateral attack on that prior adjudication, and so does not support the relief granted.

■■■ A probate court adjudication which finally settles and distributes an estate and discharges the administrator constitutes a final judgment and is impregnable to collateral attack. *Gorg v. Rutherford*, 31 S.W.2d 585, 589[8–11] (Mo.App. 1930). Such a final judgment, as any other, may be set aside by equity in a direct

proceeding for that purpose where the fraud of an adversary prevents the complainant from presentation of the full strength of his case. *Stark v. Cole,* 373 S.W.2d 473, 477[9–11] (Mo.App.1963); 49 C.J.S. Judgments § 371. The fraud which prompts equity to act must be a deception in the procurement of the judgment and extrinsic to the issues adjudicated at the trial. *Walther v. Null,* 233 Mo. 104, 134 S.W. 993, 1002[6] (Banc 1911). The complaint of fraud, to be heard, must be unmixed with the negligence or want of due diligence of the party who seeks relief to act on knowledge to prevent the entry of judgment. *Wuelker v. Maxwell,* 70 S.W.2d 1100, 1102[4] (Mo.App.1934).

The counterclaim recites that Acle Dewey died intestate, left property, and was survived by the three children to each of whom an undivided one-third of the partition res descended by law. The counterclaim pleaded also that during his lifetime Acle Dewey agreed to advance $11,592.94 to his son Richard against his inheritance, but that through the deception and nondisclosure of son Richard the sum advanced was not taken into account in the settlement of the Acle Dewey estate. The counterclaim concludes with the request that the proceeds from the partition sale allocable to son Richard be set off in equal shares to the sisters in the amount of the advancement.

No doubt, the counterclaim in terms does not plead direct relief against the probate court judgment. There is no prayer that the order of final settlement, distribution and discharge of the administrator be set aside. That judgment comes into question only by adversion. Yet, a court of equity will not allow a formal mispleading to prejudice the substance of a claim, especially in cases of fraud. Pomeroy, Equity Jurisprudence § 910 (5th ed. 1941). In equity practice, no less than at law, the jurisdiction to enter a judgment rests on a pleading which states the theory of the case sufficiently to inform the adversary and the court the questions presented for decision. *Spitcaufsky v. Hatten,* 353 Mo. 94, 182 S.W.2d 86, 95[8, 9] (Banc 1944).

But the rules of pleading do not apply with the same stringency to causes in equity when to do so impairs the inherent function of equity to give relief. That is only to say that equity looks to the substance of a claim not the form. *Melvin v. Hoffman,* 290 Mo. 464, 235 S.W. 107, 114[2–4] (Banc 1921); 30A C.J.S. Equity § 179.

The power of equity to grant relief against a judgment procured by fraud is inherent and peculiarly a matter of such jurisdiction. *Johnson Timber & Realty Co. v. Belt,* 329 Mo. 515, 46 S.W.2d 153, 155[4–6] (1932); 49 C.J.S. Judgments § 372. Equity is quick to redress a fraud the law cannot remedy. *Strothcamp v. Sandy Ford Ranch, Inc.,* 440 S.W.2d 193, 195[1, 2] (Mo.App. 1969). In the conferral of such a relief exclusively within its power to give, equity knows no limits but shapes the remedy to meet the demands of justice without regard to any determined form. Pomeroy, Equity Jurisprudence, § 910 (5th ed. 1941); McClintock on Equity, § 14 (2d ed. 1948). Equity, however, rests on conscience and so will not render a decree, the circumstances considered, incompatible with fairness to the adversary.

The litigation to which the counterclaim is made is an action to partition real estate among the heirs at law. The statutory mode of such a proceeding [Chapter 528] does not preclude equity jurisdiction [*Spitts v. Wells,* 18 Mo. 468 (1853)] but, rather, the partition court is vested with chancery powers to adjudicate equitable claims. *Devoto v. Devoto,* 31 S.W.2d 805, 807[2–6] (1930) [transferred]; *Devoto v. Devoto,* 39 S.W.2d 1083, 1084[1, 2] (Mo.App. 1931). Thus, the counterclaim which seeks to redress a fraud from the proceeds of the sale merely invokes the latent equity powers of the partition court.

The counterclaimant rests her standing before equity on allegations that: she is an heir equally with her brother and sister to the estate of the deceased father; that there was an advancement by the father to the brother against his inheritance; that because of the deception and non-disclosure of the son the sum advanced to him was not

taken into account at the settlement of the estate; and that the amount thus wrongfully received from the estate be set off to the sisters from the proceeds due the brother from the partition sale. The counterclaim, albeit rudimentary, pleads an understandable action for fraud and a claim to equity. The pleading does not in express terms request that the probate court judgment be set aside, but that imputation inheres in the equity sought.

The son Richard contends that the circumstances of the fraud were not pleaded with the particularity required by Rule 55.15. The reply, however, does not set up that insufficiency nor seek dismissal on that ground. Rather, as the son Richard concedes, the pleading clearly intends an action on fraud. Moreover, the evidence taken most favorably to the decree, proves each of the component elements of actionable fraud. *Kestner v. Jakobe,* 446 S.W.2d 188, 193[1, 2] (Mo.App.1969):

*A misrepresentation:*

The brother, Richard, in response to the separate inquiry of the sisters and administrator as to the possibility of an advancement still extant replied, on the one hand, that the money to build the house had been a gift from the father and, on the other hand, that it was an advancement since fully repaid. These were positive affirmations of fact, and untrue.

*Falsity:*

Richard knew when he made them that these statements were false—as evidenced by the exhibit document wherein he acknowledged that the money received from the father was an advancement against inheritance from him.

*Materiality:*

That these representations go to the substance of the dispute between the brother and sisters is not in dispute. Had the advancement agreement been known during pendency of the estate, the administrator in the normal discharge of duty would have sought adjudication that the unpaid advancement be deducted from the distributive share due Robert.

*Knowledge by the utterer of the falsity of the representations or ignorance of its truth; intent that the representations should be acted on by the persons in the manner reasonably contemplated:*

The evidence allows the imputation of these two elements of proof consistent with the judgment entered by the trial court—that Robert knew his statements were false and that they were intended to mislead his sisters into belief that there was no unpaid advancement and so induce their inaction. Robert did not testify, so his state of mind is left to these inferences alone.

*Ignorance of the hearers of their falsity, reliance on their truth, and the right to rely thereon:*

The evidence allows, also, the conclusion that although the sisters had intimations of an advancement, they had no actual knowledge of the arrangement or that the explanations of repayment given them by Robert were not truthful. [Although the representations—that the money was a gift and that the money was an advancement since repaid—appear contradictory, the statements could readily have been understood to mean that the portion of the advancement not sufficiently repaid by the bank loan was forgiven by gift.] Nor can brother claim that the sisters lacked due attention to their interests by failure to make another or different inquiry so as to be culpable for the loss of their legal remedy in the probate court action.

The fraud practiced on the sisters was not only a false representation but a suppression of the truth in circumstances which compelled them to rely on what he told them. There had been diligent search for documents which could relate to such a transaction but none were found until after the probate court order of distribution became a final judgment. In the absence of such a species of proof neither the sisters nor the administrator reasonably could avail to prove the advancement. The general doctrine which denies the aid of equity to a suitor who neglects means of information within

easy reach does not apply where the fraud consists of a positive representation intended to induce the very conduct which then results. *Universal C. I. T. Credit Corporation v. Tatro,* 416 S.W.2d 696, 703[16–20] (Mo.App.1967); *Judd v. Walker,* 215 Mo. 312, 114 S.W. 979, 980 (1908). Rather, one may act "upon a positive representation of fact notwithstanding . . . the means of knowledge [are] especially open to [the person to whom it is imparted]." *Cottrill v. Crum,* 100 Mo. 397, 13 S.W. 753, 755 (1890). And this principle has special validity in circumstances where the facts may be assumed to be within the knowledge of the person who declares them. Pomeroy, Equity Jurisprudence, § 895 (5th ed. 1941).

■ A court of equity will set aside a judgment for fraud in the procurement, proved but not pleaded, where the petition as a whole adequately presents the issue, and where the want of precise allegation does not mislead or otherwise disadvantage the adversary. *Johnson Timber & Realty Co. v. Belt,* 329 Mo. 515, 46 S.W.2d 153, 155 (1932). This exercise rests on the maxims that the substance of an action controls the form [*Melvin v. Hoffman,* 290 Mo. 464, 235 S.W. 107, 114[2, 3] (Banc 1921)], that where equity obtains jurisdiction over a feature of a controversy it will proceed to award complete relief [*Phelps v. Scott,* 325 Mo. 711, 30 S.W.2d 71, 75[5] (1930)] and that equity avoids multiplicity of suits and circuity of action. Pomeroy, Equity Jurisprudence, § 251 et seq. (5th ed. 1941).

■ The parties cite *Stark v. Cole,* 373 S.W.2d 473 (Mo.App.1963) from this court both to support equity jurisdiction to adjudicate the fraudulent procurement of the probate court judgment—even in the absence of specific pleading of the decree and request that it be set aside—and also to deny assumption of jurisdiction. The appeal in *Stark v. Cole, supra,* was from the *dismissal of the petition*—before evidence was taken. The pleading alleged that the wrongdoing of the administrator and surety to deprive the plaintiff heir-at-law assets

due her from the estate and sought an accounting. A final settlement and order of distribution some years earlier had been adjudicated in the probate court proceeding. The court determined that the judgment concluded those matters necessarily involved in the settlement, including the claim of the plaintiff, and was not subject to the collateral attack of the petition for accounting. The court did not turn the plaintiff away, however, but allowed amendment of the petition by separate count in equity to nullify and set aside the final settlement for fraud as prelude to the remedy for accounting. To adopt that course and remand for repleading when, as here, the cause of action pursued and the remedy sought are fully known to the adversary, and when proof has been made, would simply be to multiply actions beyond necessity in contradiction of the tenets of equity. Rather, as in *Johnson v. Stull,* 303 S.W.2d 110 (Mo.1957), the court will treat an action as a direct attack against a judgment procured by fraud where the parties understood that to be the issue the evidence litigated and where that relief was consistent with the pleadings. See also *Johnson Timber & Realty Co. v. Belt, supra,* l. c. 155[4–6].

■ The other point contends that recovery is barred to the sister nevertheless because on November 26, 1974, while the estate still pended the three children, Charlotte Jenkins, Rovilla Hartman and Richard Dewey by formal document released each other from all actions, claims and demands whatsoever. The brother contends that the inclusive recitation of release of claim: "which any of them has against the other or others or ever had . . or . . may have by reason of any matter whatsoever at any time prior to the date of these presents . . ." must be understood to include the subject of the counterclaim—the advancement.

The agreement of release was not only among the heirs, but also included M. R. Jenkins as signatory in his capacity as administrator of the estate and as president of Ace Dewey, Inc. [construction firm owned

and operated by decedent] and as president of Starlight Building Specialties [apparently an affiliate firm]. The essential subject of the release was to facilitate the liquidation of the Dewey, Inc. construction enterprise and its obligations under contracts still to be completed. The agreement included terms, among others, for consent of the heirs to a petition in the probate court for the disbursement of $24,000 to meet the obligations of a performance bond on the construction. The agreement then recited—without further definition—a state of dispute among the parties and that the purpose of the agreement was to fully settle these disagreements without resort to litigation. The agreement then goes on to delineate the agreed undertakings of the various parties signatory as to the liquidation of the Dewey, Inc. indebtedness, including a provision for a residual liability of the heirs for work on contracts yet to be performed. There was a separate agreement among the three heirs to defer the partition action for one year and to cooperate in that sale.

If it may be assumed plausibly that these recited agreements show intention to take into account the possibility of advancements to the heirs, nevertheless, the release would have no efficacy as to that subject-matter fraudulently concealed from and misrepresented to the sisters. The trial chancellor found expressly that the agreement signed by the sisters did not preclude their counterclaim because the brother had fraudulently concealed from them the fact of the advancement. The brother cannot contend release from a claim of which the sisters had no knowledge, particularly where his conduct prevented that knowledge. The evidence supports the determination of the trial court. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The evidence suffices to sustain the implicit determination of the trial court that the probate court judgment was procured by the fraud of brother Richard and that the proceeds due him from the partition sale are impressed with the equity of the sisters. *Stark v. Cole, supra,* l. c. 477[9–11].

The judgment is affirmed.

All concur.